88 U.S. 481
 22 L.Ed. 471
 21 Wall. 481
 GROSHOLZ
v.
NEWMAN.
 October Term, 1874
 
 APPEAL from the Circuit Court for the Western District of Texas.
 By the constitution of Texas, on the subject of 'The Homestead,' it is ordained that 'the owner thereof, if a married man, shall not be at liberty to alienate the same unless by the consent of the wife,' &c.[1]
 With the abovementioned provision of the constitution of Texas in force, one Gustavus Kirchberg, a blacksmith, and Catherine, his wife, went from Pennsylvania, A.D. 1849, to the city of Austin, Texas, and immediately bought lot 6 in block 111 in the city named. On the east or Avenue side of the lot they soon built a smith's shop, and on the extreme back or rear edge of the lot they put their dwelling-house. See the diagram on the following page.
 In this same block 111 were lots 7 and 8; these lots being separated from lot 6 by an intervening alley 20 feet wide.
 In June, 1850, Mrs. Kirchberg, writing to her sister at Philadelphia, said:
 'Our affairs are good, and now we are building. We have a lot in the main street in Austin, and we will buy the adjoining one for a garden. Our dwelling will be finished in four weeks. The well is also dug and there is good water. The shop has also been commenced, so we are now busily engaged until we have everything in order.'
 In December, 1850, Kirchberg purchased from the State the two lots 7 and 8, above described; his purchase being entered upon the State records, but he getting no patent for the lots.
 In November, 1851, without his wife's consent, he executed to one Wahrenberger, for the consideration, as expressed, of $150, a conveyance in form absolute of these lots 7 and 8.
 After this deed was made, that is to say in the summer of 1852, Kirchberg and his wife erected upon the extreme rear or east end of lot 7 their kitchen, which was thereby placed just in the rear of their dwelling and with nothing but the twenty feet wide alley intervening. And in 1853, a tenant of Kirchberg erected on lot 8 a house used by him as a dwelling for some months, and afterwards by Kirchberg as a brewery; he having by this time given up the trade of a blacksmith for the business of brewing. The diagram explains the matter of places.
 In June, 1856, the husband and wife conveyed lots 6, 7, and 8, to one Costa, in trust, to secure the payment of a promissory note of $435, of Kirchberg's, then held by the Wahrenberger above-named.
 And on the 1st of March, 1860, they executed another deed of the same lots to the same Costa, to secure a note of Kirchberg's then held by Wahrenberger for $496. This second trust-deed, it was not denied, was in cancellation of the debt which was secured by the former one; that of June, 1856.
 By the terms of both these trust-deeds, Costa had power to sell all the lots if the notes were not paid; but if they were paid the deeds were to become void. Both notes were paid.
 Kirchberg having died prior to 1861 without issue, all his property vested in his wife, and she having died some time in 1862 her property passed to her heirs; persons, as was alleged, named Grosholz.
 Wahrenberger subsequently sold the lots 7 and 8 to one Newman, and the family Grosholz alleging heirship, now, May, 1870, filed a bill againt Newman in the court below to have the deed of November, 1851 (the deed of lots 7 and 8 executed by the husband alone), set aside as having covered in terms lots 7 and 8 (which were alleged in the bill to be a part of the homestead); as having really conveyed nothing, but as being nevertheless a could on the true title.
 A patent from the State issued in 1869, 'to the heirs of Gustavus Kirchberg,' and on this the family Grosholz had previously brought an action at law (trespass to try title), which was determined against them, and about the identity of which with the present case some evidence was given below.
 At the time of her death in 1862 Mrs. Kirchberg was in possession of lots 7 and 8, and apparently either her husband or she had been continuously and notoriously so since the summer of 1852, when the kitchen was built on lot 7.
 The bill alleged that by the laws of Texas the husband could not convey any part of the homestead without the wife's assent; that the assent of the complainant, the wife of Kirchberg, had not been given to his conveyance in November, 1851, of the lots 7 and 8; that the homestead was composed of all three lots 6, 7, and 8 alike; that previous to the purchase of lots 7 and 8, the said Gustavus and Catherine Kirchberg had no kitchen or other tenement upon lot 6 or elsewhere, excepting their dwelling at the extreme rear edge of lot 6 as aforesaid; and that the purchase and acquisition of lots 7 and 8 were made with the intention and for the express purpose of designating and using them as parts of the homestead.
 The bill further averred——
 That 'down to the death of the said Catherine, on or abut the ___ day of _____, 1862,' her husband or herself from the summer of 1852 had open, notorious, and continued adverse possession of lots 7 and 8:
 That by the deeds of trust and the facts connected therewith, it appeared that Wahrenberger for many years after the making of the absolute deed to him, and notwithstanding it, fully recognized the absolute right and title of the husband and wife to those two lots, and dealt with them about the lots as owners, receiving for his benefit the deeds executed to Costa by them for his benefit; and that he was, therefore, estopped from setting up title under the deed of November, 1851, absolute on its face. But the bill nowhere charged that the deed was a mortgage, nor offered to redeem as if it were, nor alleged that it had as a mortgage been paid.
 The answer declared ignorance of the intention or purpose with which the purchase and acquisition of lots 7 and 8 had been made; asserted on belief and information that part of the purchase-money for them was paid by Wahrenberger, though the entry of purchase was in Kirchberg's name alone; asserted the bona fides and legal efficacy from its date in November, 1851, of the deed of that date from Kirchberg to Wahrenberger conveying them to the latter, and of the mesne conveyances from Wahrenberger to the defendant, denied that either lot 7 or lot 8 was ever really part of the homestead; denied that lot 7 was ever even used as part of the homestead till 1852, after the making of the deed to Wahrenberger; denied that lot 8 was ever even used as part of the homestead at all. Admitted the death of Mrs. Kirchberg 'on the ___ day of _____ A.D. 1862, intestate;' did not admit the heirship of the complainants, and finally denied the effect of the trust-deeds asserted by the complainants.
 As the adverse possession was not admitted to have begun prior to the summer of 1862, its value as a bar (which in Texas is ten years), depended, of course, on the fact whether Mrs. Kirchberg, who, it was admitted, died 'on the ___ day of _____ A.D. 1862,' died prior to the summer of that year. There was no specific evidence to that point. However, there were several complainants, and it was, of course, necessary to prove their heirship to Mrs. Kirchberg at the time of her death. Depositions of different parties were taken to prove the heirship of the complainants; this being one of the complainants' interrogatories:
 'If the wife of Gustavus Kirchberg had in the spring of 1862 any father, mother, or brothers and sisters, or descendants of deceased brothers or sisters, state fully who all such kindred were, and show the degree of relationship between them and her. State also the residence of each of such kindred.'
 And the heirship of the complainants in the spring of 1862 seemed to be established.
 The court below dismissed the bill, and the complainants brought the case here.
 Mr. G. W. Paschall, for the appellants, enforcing the points of 'the homestead,' adverse possession, &c., made in the bill and already stated, argued in addition that plainly the deed of November, 1851, was but a mortgage; that obviously Kirchberg had owed money to Wahrenberger; that the deed of 1851 was given to secure this money; that the possession taken by the husband and wife of the lots 7 and 8 in 1852, and their building a kitchen and other houses on them and keeping possession, indicated this, and that it was made undeniable by Wahrenberger's accepting two mortgages at different times on the lot, subsequently to the deed of 1851, since a mortgage given to him on his own property would be senseless; and that this was what the bill meant, in asserting that the defendants were estopped to set up the deed.
 Messrs. John Hancock and C. S. West, contra, argued that no family could acquire a homestead by building on lots which belonged to other persons; and insisted upon the fact that the deed of November, 1851, was an absolute deed; that the bill did not charge it to be a mortgage, and made neither allegation of payment nor offer to redeem; that if it were in fact a mortgage Newman was apparently a bon a fide purchaser for value of a title regular on its face, and there absolute; and that finally, under the laws of Texas, the plaintiff was concluded by the judgment in the action at law, of trespass to try title.
 The CHIEF JUSTICE delivered the opinion of the court.
 
 
 1
 The first objection alleged against the deed which the complainants ask to have cancelled is, that it was made for the purpose of conveying a part of the homestead of the Kirchbergs, and, as such, was void because the wife did not join with the husband in its execution.
 
 
 2
 It is admitted that the deed was good, if the lots described in it were not, in fact, a part of the homestead at the time of its execution. It rests upon the complainants, therefore, to prove that they were. To do this it must be made to appear that they were actually used, or manifestly intended to be used as part of the home of the family. This has not been done. The lots were purchased in 1850, but not occupied until 1852. Then a small building was erected upon one of them, and it was thereafter occupied in connection with the family residence. This was after the deed was made, and, of course, cannot control its operation. Mrs. Kirchberg, in a letter written to her sister in Pennsylvania, in June, 1850, says, 'we have a lot on Main Street, in Austin, and will buy the adjoining one as a garden,' but there is no proof that the intention of connecting this adjoining lot with the home was in any manner manifested in Austin until long after the deed in question was executed and delivered. A secret intention of the seller, not made known, cannot affect a purchaser. Unless the purchaser knew, or from the circumstances ought to have known, that the lots were a part of the homestead, he had the right to treat with and purchase from the husband without the concurrence of his wife.
 
 
 3
 It is next alleged that the Kirchbergs occupied the premises adversely to the grantee for more than ten years after the execution of the deed, and that therefore the title under it has failed.
 
 
 4
 The burden of proving this allegation also rests upon the complainants. It is shown that the occupation of the Kirchbergs was continuous, and probably adverse, from the time of the building of the kitchen upon lot 7 until the death of Mrs. Kirchberg. The kitchen was built in the summer of 1852, and so far as appears from the testimony, the adverse occupation did not commence until then. To create the bar it must have continued until the summer of 1862. Mrs. Kirchberg died in that year, but there is nothing to show at what time in the year. It is several times stated in the bill that she died 'on the ___ day of _____, 1862,' and the answer, as many times, admits the statement in the same language. No witness gives the exact date, but as several were examined by the complainants to show what relatives Mrs. Kirchberg had living in the spring of 1862, it is fair to presume that was the time of her death. But however this may be, as the complainants have failed to prove that she did not die before the summer of that year, this part of their case fails.
 
 
 5
 It is next insisted in the bill, but not in the argument, that the defendants are estopped from setting up the deed in question by reason of the trust deeds to Costa, executed afterwards by the Kirchbergs at the request of Wahrenberger, to secure the debt due to him, and that, therefore, it should be cancelled.
 
 
 6
 This is in direct conflict with the uniform current of decisions in this court, commencing with Blight's Lessee v. Rochester,[2] and ending with Merryman v. Bourne.[3]
 
 
 7
 It is next urged in the argument that the deed was given as a mortgage to secure a debt which has been paid.
 
 
 8
 There is no allegation in the bill to support this claim. The recovery must be had upon the case made by the pleadings or not at all.
 
 
 9
 It is unnecessary to consider the effect, under the laws of Texas, of the judgment in the action of trespass instituted by the complainants to try their title to the property.
 
 
 10
 DECREE AFFIRMED.
 
 
 
 [1]
 See the whole subject presented in Paschall's Digest of Decisions, vol. 2, title 'Homestead,' §§ 14,537, 14,538, 14,589-14,591; also in The Homestead Cases, 31 Texas, 684.
 
 
 [2]
 7 Wheaton, 535.
 
 
 [3]
 9 Wallace, 600.