BONNER, APPELLANT, *v.* MINNIER ET AL., RE-
SPONDENTS.

[Submitted June 21, 1893. Decided September 5, 1893.]

HOMESTEAD—*Mechanic's Lien.*—A homestead is not exempt from foreclosure and sale to satisfy a lien for materials used by the owner in the improvement thereof, such lien being a "Mechanic's Lien" within the meaning of section 323 of the Code of Civil Procedure providing that the exemption of homesteads from forced sale shall not affect any laborer's or mechanic's lien. (DE WITT, J., dissenting.)

*Appeal from Third Judicial District, Deer Lodge County.*

Action to foreclose mechanic's lien. The cause was tried before DURFEE, J. Defendants had judgment below. Reversed.

Statement of the case by MR. JUSTICE HARWOOD.—This action was brought to obtain judgment, and foreclose a lien to enforce payment, for materials furnished and used in the construction of a certain house in the village of Champion, Deer Lodge county. It appears that said house was built upon a piece of land theretofore vacant, being part of a quartz lode mining claim, purchased by defendant Minnier from one Baudet, which purchase was originally evidenced by a bill of sale

executed by Baudet to Minnier.   But it appears to be con-
ceded that the money used in said purchase belonged to defend-
ant Mrs. Minnier; that, while the title to the property stood
in that condition, the defendant Minnier, with the knowledge
and approval of his wife, commenced the erection of a house
on said land, and purchased from plaintiff, and used in said
structure, certain lumber and other materials; that, to secure
payment for said building material, plaintiff filed his account
thereof, and notice of lien on said property, as provided by
law; that, some time after the commencement of the construc-
tion of said house, a formal conveyance of said premises was
made by said original owner, Baudet, and defendant Minnier,
to his wife, Mrs. Minnier.   Said house appears to have been
constructed and arranged so as to be used for residence pur-
poses, or as a place of business, or for both such purposes;
that, as soon as the house was sufficiently constructed to admit
of habitation, defendant and his wife moved therein, and occu-
pied the same continuously as their home, and Mrs. Minnier
also fitted up and operated a barber's shop in one room of said
house; that defendants own no other real property as a home-
stead or otherwise; that defendants failed to pay for said
building materials, wherefore this action was brought to fore-
close said lien, and subject said premises to sale to enforce such
payment.   There was no controversy raised in the action as to
the furnishing of said building materials by plaintiff, or the
use thereof by defendants in the erection of said building, and
the nonpayment therefor, as alleged.

The only defense set up was that defendants claimed said
premises as their homestead, and that the same, being a home-
stead, was not subject to a lien for said building materials so
purchased and used in the improvement thereof.   There was
some controversy in the case as to whether said premises con-
stituted the home of defendants at the time said materials were
furnished and used in the improvement thereof; but the trial
court sustained the contention of defendants that said premises
constituted their homestead, and the court further held that the
statutes of this state exempt homesteads from the charge of a
lien for building materials procured and used in the erection
of improvements thereon, and judgment was rendered accord-

ingly, from which judgment, and an order overruling plaintiff's motion for a new trial, this appeal was prosecuted.

*Brantley & Scharnikow,* for Appellant.

I.   The claim of homestead exemption made by defendants is not good as against the claims of the lienors. The homestead law provides that land situated in a village or town, as is the case of the land in controversy herein, shall be owned and occupied as a homestead, in order that it may "not be subject to forced sale on execution or other process from a court." (Comp. Stats., 147, § 322.) It is therefore essential, in order that a claim of homestead exemption may be good, that the property be actually occupied as such at the time the claim sought to be enforced against it accrues. The person asked to give credit will thus be notified of the claim of homestead, and can act accordingly. (Thompson on Homesteads and Exemptions, §§ 244, 247, and 317; 9 Am. & Eng. Ency. of Law, pp. 426, 436, and 447, and note; *Elston* v. *Robinson,* 23 Iowa, 208; *Charless* v. *Lamberson,* 1 Iowa, 435; 63 Am. Dec. 457; *Christy* v. *Dyer,* 14 Iowa, 438; 81 Am. Dec. 494; *Walters* v. *People,* 18 Ill. 194; 65 Am. Dec. 730; *Tumlinson* v. *Swinney,* 22 Ark. 400; 76 Am. Dec. 432; *Pryor* v. *Stone,* 70 Am. Dec. 347, note.)

II.   We insist further, that the use of the words "laborer's or mechanic's lien" as used in the exception created by section 323, page 147 of the Compiled Statutes of Montana, is generic, and that these are to be taken in a broad and popular sense, embracing every character of lien provided for in the lien law, to wit: Comp. Stats., § 1370, p. 1029. The language of this latter section is general and comprehensive and gives a lien to any person who contributes directly in any way by his labor or material furnished to the improvement of any real estate of whatever kind or character, making no exception whatever.

This statute is called the Mechanic's Lien Law, both in the Compiled Statutes and in the decisions of this court, and the object is to create and preserve ample security to the laborer or material-man. The lien law and the section referred to above (§ 323, p. 147), as they now are in the Compiled Statutes, are

parts of the same general act, and they must be construed so as to make them consistent and not contradictory. This can be done only by regarding the words "laborer's and mechanic's lien" as generic and embracing all classes of liens referred to in the lien law. Where a word having a technical, as well as a popular, meaning is used in a statute the courts will accord to it its popular meaning unless the very nature of the subject indicates, or the context suggests, that it is used in its technical sense. (Sutherland on Statutory Construction, p. 329, § 250.)

This constructive meaning of the terms was early recognized by this court in the case of *Mochon* v. *Sullivan*, 1 Mont. 472.

This court also held in the case of *Merrigan* v. *English*, 9 Mont. 125, that a mechanic who also furnishes material has a lien as against a homestead for both labor and material.

In *Phelps etc. Windmill Co.* v. *Shay*, 32 Neb. 19, the court calls the lien for materials a mechanic's lien. The statutes of Nebraska providing for such liens and creating the exception thereunder are similar to ours, and the section granting homestead exceptions uses the same words, to wit: mechanic's or laborer's, as are used in our statute. Yet the court, in construing these two statutes, holds that a material-man has a lien for materials used for the erection of improvements on a homestead. And this is a case in which the lien was for material only.

III. If the debt has accrued prior to the occupation of the property as a homestead, or if the claim is for the money that purchased it, or for the material out of which it was erected, the claim of the creditor is superior to the claim of homestead. (Thompson on Homesteads, §§ 372, 373.) The lien for labor or material, when duly fixed by filing the claim and notice, relates back to the commencement of the labor or the use of the material. (*Mochon* v. *Sullivan*, 1 Mont. 472; *Merrigan* v. *English*, 9 Mont. 126.) The lien then having attached itself to the property prior to any occupation by the owner, the necessary act on his part to establish his right to claim the exemption, it follows that it is superior to the homestead right. (*Tuttle* v. *Howe*, 14 Minn. 145; 100 Am. Dec. 205; *Charless* v. *Lamberson*, 1 Iowa, 436; 63 Am. Dec. 457.) The statutes

of both Minnesota and Iowa are the same as ours, and ours was taken from them.

IV.  The decision in *Walsh* v. *McMenomy*, 74 Cal. 356, upon which the defendants rely as conclusive, is directly contrary to that of *Phelps etc. Windmill Co.* v. *Shay*, 32 Neb. 19. But this court in *Lindley* v. *Davis*, 7 Mont. 212, held that our statute was not taken from the California law, and refused to be bound by the California decisions.  The Minnesota, Iowa, and Nebraska statutes being the same as ours, we believe the decisions of those states should be followed as construing the statute according to its true meaning and spirit, and according to principles of sound reason and justice.

*W. H. Trippet*, for Respondent.

A statute similar to our section 323, page 147, Compiled Laws, has been construed by the supreme court of California, in the cases of *Richards* v. *Shear*, 70 Cal. 187, and *Walsh* v. *McMenomy*, 74 Cal. 356, wherein it is held that a material-man is not comprehended by the terms "mechanic" or "laborer."  It would certainly require a stretch of the imagination to construe them to mean the same thing or anything like the same thing.  *Duncan* v. *Bateman*, 23 Ark. 327, 79 Am. Dec. 109, is a case in point, and it is there held that "a lumberman is not an artisan, a builder, or a mechanic."  The plaintiff here is either a lumberman or a material-man, and it could with as much truth be said that either of those words meant a "laborer" as to say that either of them meant a "mechanic." To say that the exemption of a homestead does not affect the lien of a material-man does violence to the language of our statute.  The only case cited by appellant which in any way controverts the California cases is that from Nebraska, reported in 32 Nebraska, 19.  The report shows that a petition for a rehearing was filed in that case, but, whatever became of it, the point decided in the California cases was not raised. Plaintiff contends, which is not conceded, that the material was furnished before the building became a homestead, and then cites authorities from the state of Minnesota, from which our homestead law was taken, claiming that they hold that if the lien attached to the property prior to its occupancy as a

homestead, then the lien would be superior to the homestead right. These authorities are squarely against the position taken by the appellant. Thompson on Homesteads and Exemptions, in section 373, shows what these decisions were. The first case was that of *Cogel* v. *Mickow*, 11 Minn. 478, which laid down a rule directly the opposite to the contention of the appellant here. Then the legislature amended the law changing the rule in that case. Then followed the case of *Tuttle* v. *Howe*, 14 Minn. 145, 100 Am. Dec. 205, which held "that, as the statutes now stand, the lien claimant, having a lien anterior and superior to a homestead, may enforce the same without any reference whatever to such homestead right," etc. See the last part of the opinion. The amended statutes under that decision were entirely different from ours. (See Thompson on Homesteads and Exemptions, § 373.) It will be seen also that the case cited by appellant (*Charless* v. *Lamberson*, 1 Iowa, 436, 63 Am. Dec. 457) does not apply to this case. The decision was on statutes altogether different from ours. The statute in that case provided that the homestead could be sold on debts contracted prior to the passage of the homestead law, and that provision of the statutes, together with prior statutes, governed the decision in the case.

HARWOOD, J.—We think under the facts shown in this case the premises in question were properly held to constitute defendants' homestead.

The important question of law involved in this appeal is whether a homestead is exempt from foreclosure and sale to satisfy a lien created by law in favor of one who furnishes materials purchased and used by the owners of such homestead in the improvement thereof. It is not disputed that by the provisions of chapter 82, page 1028, of the Compiled Statutes of this state, a lien is expressly created in favor of parties furnishing materials contracted for and used by the owners of land in making improvements thereon, without any exception in favor of homestead premises. But it is contended by respondents that, notwithstanding the provisions of that statute, the statute providing exemption of homesteads and other property from forced sale on execution (Code Civ. Proc., §§ 321–

30) withholds the homestead from the operation of such lien if it accrued for material alone, furnished and used in the improvement of the homestead.

To maintain this proposition, respondents rely on a strict and very narrow interpretation and application of the clause of section 323 of the Code of Civil Procedure, which provides that "such exemption shall not affect any laborer's or mechanic's lien, or extend to any mortgage thereon lawfully obtained." It is argued that this provision is not broad enough to include the lien declared by statute in favor of one who simply furnishes materials used in the improvement of a homestead; and that, consequently, the plaintiff, who furnished material only, which was procured and used by defendants in the improvement of their homestead, is barred of relief, by way of enforcement of said lien.

In the case of *Merrigan* v. *English*, 9 Mont. 113, the court refused to so construe and apply the provisions of the exemption statute just cited as to deny the enforcement of a lien on a homestead for material furnished—namely, a mantel—in favor of the mechanic who furnished the same, as well as the labor involved in setting said mantel in the building. The only real difference between that case and the one at bar appears to be that, in the former case, the lien claimant occupied the position of furnisher of material, as well as labor, on the premises, in shaping the material so furnished into the building; whereas, in the case at bar, the lien claimant furnished and delivered material, without any labor towards the erection of the building on the premises. If the view urged by respondents is adopted the effect of such holding would appear to be that one who manufactured, hauled, and delivered the brick, or quarried, cut, hauled, and delivered the stone, or went into the forest, cut, manufactured, transported, and delivered the lumber contracted for, and used in the erection of improvements on a homestead, would be denied enforcement of the lien which the law declares he shall have to secure payment for such materials, because he would be simply the furnisher of material for the structure, like the plaintiff, and would, according to such construction and application of the exemption statute, not be included within the meaning and intent of the legislature in

declaring that such exemptions shall not affect the liens of laborers and mechanics. We do not think such a view gives effect to the intent of the legislature, as manifest in these statutes. Even without any further expression of the legislative intent on this point than the clause of section 323 above referred·to, we could not adopt the view urged by respondents as giving effect to the intent of the law. We are satisfied that, in providing that such exemptions shall not affect any laborers' or mechanics' liens, the legislature referred to the liens for material and labor provided for by the statutes of this state commonly mentioned as the "Mechanic's Lien Law." Such improvements, in fact, comprise labor bestowed upon material, both on and off the premises where the improvement is placed. Payment for the material is payment for the labor expended upon it through all the changes it has undergone, from its natural raw state, until placed in the structure.

But if, in looking at section 323 of the exemption statute alone, there is room to raise doubts as to the intent of the legislature, and room for contention that a homestead claimant may obtain material for improvement on·his homestead, and enjoy the same without payment, in case no property can be found over and above the exemption, there is still another provision in the same statute which seems to give further light as to the intention of the legislature on the point under consideration, namely, a provision of section 328, wherein it is declared "that this act shall not be construed as to in any manner relate to judgments or decrees rendered on the foreclosure of mortgages, either equitable or legal." The lien under consideration is a specific encumbrance, existing through a positive enactment of the legislature, operating upon certain facts, and the lienor would seem to be entitled to his judgment of foreclosure, on showing the facts and a compliance with the statute, the same as a party, on making out his case, is entitled to judgment for debt, although the debtor may not have property subject to an ordinary execution. Now, when it comes to the execution of these judgments, it is found that the legislature has made a distinction between them in the statute relating to exemptions, declaring, in effect, that such exemptions shall not be construed to affect judgments or decrees of foreclosure of specific encum-

brances. If this is not the plain intendment of the provisions of the exemption statute last-above quoted, we think it would be difficult to conceive or reasonably explain the intent those provisions manifest.

The rules of construction that several provisions of statutes relating to the same subject shall be considered and construed together, so that all the provisions shall be given reasonable force and effect, if possible (Code Civ. Proc., § 631), and that, "when a statute is equally susceptible of two interpretations, one in favor of natural right and the other against it, the former is to be adopted" (Code Civ. Proc, § 638), both, we think, demand such a construction of the statutes in question as will give force and effect to appellant's lien.

Respondents cite, in support of their position, *Richards* v. *Shear*, 70 Cal. 187, wherein the court held that the homestead was not subject to sale in satisfaction of a lien for material alone, furnished in the improvement thereof. While there is some likeness, but not entire similarity, in the provisions of the California statute and the clause of section 323 of our code above quoted, it does not appear that the California court was aided by such general proviso as we have in section 328 to show the intendment of the legislature. It has been shown that the exemption statute of Montana was not taken from California, in *Lindley* v. *Davis*, 7 Mont. 207, and *Merrigan* v. *English*, 9 Mont. 113, and considering the difference of form, as well as additional provisions we have to construe and apply, it would seem to be an abdication of reason to follow the holding in the California case just cited. It should be further observed that in a recent case the supreme court of Nebraska placed a construction opposed to that of California on statutory provisions entirely similar. (*Phelps etc. Windmill Co.* v. *Shay*, 32 Neb. 19.) The holding in the case of *Duncan* v. *Batemen*, 23 Ark. 327, 79 Am. Dec. 109, cited by respondents, is based upon different statutory provisions than those prevailing in Montana. It was there held that the statute of Arkansas did not create a lien in favor of one who simply furnished material. Such might be the case. The lien depends on the statute for existence. But here it is not disputed that the statute imposes the lien in favor of appellant; and we

think, without doubt, the legislature intended the homestead should be subject to a lien, and to foreclosure and sale thereunder for material obtained and used by the owners of the homestead in the improvement thereof.

Judgment is therefore reversed, and the cause remanded for proceedings in conformity with the views herein expressed.

PEMBERTON, C. J., concurs.

DE WITT, J. (*dissenting*). This action is brought to foreclose a lien for materials furnished for a building of defendants. The case was tried by the court without a jury. Defendants are husband and wife. The court gave a money judgment against Minnier, but denied the lien. Plaintiff appeals.

The defense against the lien was that the premises were a homestead, and, as such, " not subject to forced sale on execution or any other final process from a court" (Code Civ. Proc., § 322), and that a material-man did not come within section 323, *supra,* which provides that " such exemption [homestead] shall not affect any laborer's or mechanic's lien," etc.

I will examine these two propositions. Our homestead law is as follows: " A homestead consisting of any quantity of land not exceeding one hundred and sixty acres used for agricultural purposes, and the dwelling-house thereon, and its appurtenances, to be selected by the owner thereof, and not included in any town plot, city, or village; or, instead thereof, at the option of the owner, a quantity of land not exceeding in amount one-fourth of an acre, being within a town plot, city or village, and the dwelling-house thereon, and its appurtenances, owned and occupied by any resident of this territory, shall not be subject to forced sale on execution, or any other final process from a court; *provided,* such homestead shall not exceed in value the sum of two thousand five hundred dollars." (Section 322, *supra.*) Under the law of this state there is no provision, as there is in many states, for filing or recording a declaration of homestead. Ownership and occupation by a resident of the state give the right of homestead. The language of the statute is " owned and occupied"; and,

even without the word " occupied " in the statute, the word
" homestead " itself embodies the idea of occupation. (Thompson on Homesteads and Exemptions, § 100 et seq.)   It is accordingly held in many decisions that, to constitute a homestead,
there must be occupation. (*Kurz* v. *Brusch*, 13 Iowa, 371;
81 Am. Dec. 435; *Moore* v. *Granger*, 30 Ark. 574; *Chipman*
v. *McKinney*, 41 Tex. 76; *Avery* v. *Stephens*, 48 Mich. 246,
*Elston* v. *Robinson*, 23 Iowa, 210; *Christy* v. *Dyer*, 14 Iowa,
440; 81 Am. Dec. 493; *Blum* v. *Carter*, 63 Ala. 235; *Charless*
v. *Lamberson*, 1 Iowa, 435; 63 Am. Dec. 457; *Bowker* v. *Collins*, 4 Neb. 494; *Drucker* v. *Rosenstein*, 19 Fla. 191, and cases
cited on page 195; Thompson on Homesteads and Exemptions,
§ 241; *Pryor* v. *Stone*, 70 Am. Dec. 247, and note.)

Again, if a lien becomes fixed upon premises before they
become a homestead, it is held in the decisions that the creation
of a homestead does not divest the lien. (*Tuttle* v. *Howe*, 14
Minn. 147; 100 Am. Dec. 205; *Cogel* v. *Mickow*, 11 Minn.
478; *Potshuisky* v. *Krempkan*, 26 Tex. 307; *Pope* v. *Graham*,
44 Tex. 198; Thompson on Homesteads and Exemptions,
§ 317, and cases cited; 9 Am. & Eng. Ency. of Law, p. 465;
*McComb* v. *Thompson*, 42 Ohio St. 139; *Thompson* v. *Pickel*,
20 Iowa, 490; *McCormick* v. *Wilcox*, 25 Ill. 274; *Estate of
McCauley*, 50 Cal. 544; *Elston* v. *Robinson*, 21 Iowa, 534; *Furman* v. *Dewell*, 35 Iowa, 170; *Cowgell* v. *Warrington*, 66 Iowa,
666; *Gunn* v. *Miller*, 43 Ga. 377; *D'Ile Roupe* v. *Carradine*,
20 La. Ann. 244; *Gunn* v. *Barry*, 15 Wall. 611.)   See, also,
cases cited in last paragraph.   Many of the above cases are
cited in Thompson on Homesteads, § 317, and sustain the text
of that author.   It is therefore often important to determine
w´en the lien accrued, and when the occupation of the premises as a homestead commenced.   In this case the material was
furnished between February 20, and April 28, 1890.   The lien
for this material, if any exists, dates from the furnishing of
the material, and not from the filing of the lien. (*Merrigan* v.
*English*, 9 Mont. 113.)

The facts in the case at bar are as follows: The building
was being erected during the time that this material was furnished.   The material so furnished was lumber, molding, lime,
glass, windows, doors, etc.   The lower part of the house was

of logs, a class of material not included in that furnished by plaintiff. It does not appear just when the building was commenced. Some of the witnesses testified that defendant Minnier and wife lived on the other side of the street while the building was being erected. One witness says: "I know this house in controversy, and am acquainted with Mr. Minnier and Mrs. Minnier. I remember when the house was built. They made their home right in the house, and until it was finished. After they had the house commenced, they built a kind of a little house of boards, temporarily, on the back part of the lot, until they could move into the house." All agree that as soon as the house was habitable the defendants moved in. The court found that the premises were the homestead of defendants. That finding is supported, and the homestead is constituted, if there be evidence that defendants occupied the premises as a homestead when the alleged lien accrued. I think that there was such evidence. A portion of the building was of logs. These would naturally be used before the class of material furnished by plaintiff. There was evidence that defendants built a small temporary house on the ground after they commenced the building, and that they lived in that temporary structure. It is not contrary to the evidence that defendants were living on the premises in this temporary structure after they commenced the building, after the log work had been done, and when the plaintiff's material was being supplied.

This case bears some resemblance to that of *Reske* v. *Reske*, 51 Mich. 541, 47 Am. Rep. 594, decided by Mr. Justice Cooley. The closing language of that opinion is so much in point that I give it entire. "The question now is whether, on the facts recited, the lot had become a ' homestead ' in a legal sense before the levy was made upon it. We are of opinion it had. The lot, as has been said, was procured for the purposes of a home, and complainant, aided by the industry and frugality of his wife, was proceeding to make it such as rapidly as their limited means would permit. They inclosed it; they had their domestic animals upon it; they came to live in the immediate vicinity; they made a well; and they put up outbuildings. Everything but the dwelling proper had been erected before the levy was

made, and the complainant was bargaining with a builder for a house. If anything was lacking to make the lot a homestead, it was because the poverty of complainant had precluded his advancing his improvements as rapidly as he desired. The lot, however, in the minds and hearts of complainant and his wife, had been appropriated as a home from before the day of their marriage; it was all the home they had; it represented all their scanty means, and was the center of their domestic hopes and aspirations. They did not as yet sleep upon it or take their meals upon it; and probably, if they had done this in some of the buildings already constructed, their right to claim a homestead would not have been disputed. But this is not an indispensable condition. The man who buys a home which is all ready for occupancy cannot have it taken from him as he is attempting to move in his goods, because he has not yet eaten or slept within it. Anyone might be deprived of a homestead if so narrow a construction of the privilege should prevail. It is people like this complainant and his wife, with very limited means, that the law encourages with its promise to save their home to them if they will but secure one; and it would be a deceptive promise if it were only made on conditions which any creditor might so easily defeat. We think it was meant to be effective in cases like the present, and that complainant is entitled to the relief he prays."

So in the case at bar, the defendants had no other property whatever. They had their all in this house. The house was situate in the town of Champion, Deer Lodge county. The husband occasionally went to Butte for a few weeks to get work. The wife stayed at home in Champion, and worked as a barber. It was in the latter part of the winter that they were building this house, and in this season of the year, which is likely to be inclement, they put up a temporary board house, in which they lived. They went into the building to which the lien is sought to be attached the moment that it was habitable. However far the decided cases go in holding that occupation is necessary to constitute a homestead, the law must be reasonable as to what occupation is. The Iowa supreme court says in *Neal* v. *Coe*, 35 Iowa, 407, cited in *Drucker* v. *Rosenstein*, 19 Fla. 196, and also in many

other decisions and by text-writers, as follows: "While intention is not alone sufficient to impress the homestead character, yet it may be considered in connection with the circumstances. Some time usually intervenes after the purchase of property before it can be actually occupied. Even after the process of moving, it frequently takes days before the furniture can be arranged and the house placed in comfortable condition for actual occupancy. Under such circumstances great inconvenience might arise if the homestead character was made to depend upon the actual personal presence of the members of the family. Law is entitled to and can command respect only when it is reasonable, and adapted to the ordinary conduct of human affairs."

The supreme court of Alabama, in *Blum* v. *Carter*, 63 Ala. 240, after reviewing many of the cases which I have cited above, says: "Guided by these principles we hold that, to constitute a valid claim of homestead, there must be an occupancy in fact, or a clearly defined intention of present residence and actual occupation, delayed only by the time necessary to effect removal or to complete needed repairs or a dwelling-house in process of construction. An undefined, floating intention to build or occupy at some future time is not enough. And this intention must not be a secret, uncommunicated purpose. It must be shown by acts of preparation of visible character, or by something equivalent to this. (*Daniel* v. *Collins*, 57 Ala. 625; *Boyle* v. *Shulman*, 59 Ala. 566; *Preiss* v. *Campbell*, 59 Ala. 635; *Chambers* v. *McPhaul*, 55 Ala. 367.)" See, also, the matter discussed in many of the cases above cited, and also in *Williams* v. *Dorris*, 31 Ark. 466; *Solary* v. *Hewlett*, 18 Fla. 756; *Barnes* v. *White*, 53 Tex. 628; *Grosholz* v. *Newnan*, 21 Wall. 481; *Fogg* v. *Fogg*, 40 N. H. 282; 77 Am. Dec. 715, which cases I have examined with others cited in the valuable note in *Pryor* v. *Stone*, 70 Am. Dec. 344. Certainly, a bare intention, without visible acts, to occupy premises as a homestead would not impress them with that character.

As was said in *Solary* v. *Hewlett*, 18 Fla. 760: "In this case there is no evidence, save the allegation in the answer, that the appellee intended to repair and reside on the premises. He had taken no steps, had done no act, to impress it with

the character of a homestead, although he owned it several months before contracting the debt upon which the judgment was found. His intentions cannot avail him under these circumstances." But in the case at bar it is deduced from the testimony, and not at all unreasonable so to consider, that the defendants were actually upon the ground, in their temporary board house, when plaintiff's material was furnished, and there was present the visible intention to occupy, and the persevering preparation, and the immediate occupation of the building, even before it was fully completed. These facts, I am of opinion, the lower court was justified in concluding brought the case at bar within the doctrine of the cases above cited, and from which I have made the foregoing quotations. *Bona fide* homesteads must be protected under the law, and on the other hand, homestead claims must not be allowed to be made the instrument of fraud. I think the *bona fides* of defendants in this case is sufficiently manifest. It may be that it is a hardship upon plaintiff. He may not have security upon the building into which his material went. But he was not required to furnish the material, and it is not to every class of creditors that the law gives this special statutory security of lien.

And this brings me to the consideration of the second point in the case. Section 323 of the Code of Civil Procedure provides that the homestead exemption shall not affect any " laborers' or mechanics' liens." A homestead is thus not exempt from the lien of a laborer or mechanic. Appellant contends that in the exception the term " laborer or mechanic" is generic, and is intended to include all material-men or lumbermen, as plaintiff is in this case. Section 1370, Compiled Statutes, gives a lien to certain classes of persons, and describes them as " every mechanic, builder, lumberman, artisan, laborer, or other person or persons, association, or partnership or corporation, that shall do or perform any work or labor upon, or furnish any material, machinery, or fixture for, any building," etc. This list of lienors includes mechanics and laborers, and also lumbermen, and general material-men, as persons are called who furnish material. Section 322 of the Code of Civil Procedure exempts the homestead from forced sale on execu-

tion, or any other final process from a court. If the statute of exemptions had stopped here, it is plain that all persons named in section 1370 as lienors would be deprived of any enforceable lien against a homestead. But section 323 follows, and makes an exception to the homestead exemption, and specifically names the excepted classes of persons as "mechanics and laborers." It does not, in terms, except all classes of lienors named in section 1370, but selects two of those classes and names them. If the intent was to let into a lien on a homestead all lienors named in section 1370, the statute would have said so. When it expressly selects two classes only, namely, laborers and mechanics, and designates them by name, and omits to name all other persons in whose company mechanics and laborers are found, in section 1370, the omission is certainly significant, and renders applicable the maxim " *expressio unius,*" etc. It is quite true that every man who furnishes material is also, in one point of view, furnishing labor, for every finished product includes the raw material and the labor placed upon it, and, as a rule, the labor in the finished product is of much more value than the raw material. This may be observed universally. The lumberman sells boards. The greatest value in the boards is the labor placed upon them. The quarryman sells building-stones. The original cost of the material was almost nothing. The value of the finished block is almost wholly in the labor. The capitalist sells the use of money, which money represents labor. But when we deal in the wares of the lumberman, the quarryman, or the capitalists, we do not call those wares "labor," nor do we call the dealers in those wares "laborers." Therefore it does not seem to me to be the simplest and plainest construction of the statute to make the words "laborer or mechanic" include a material furnisher, because the material supplied by that furnisher is the result of labor. I am of opinion, therefore, that the words " mechanics and laborers" in section 323, are not generic, as appellant urges, and would not include material-men and lumbermen. This view has been held in California. (*Richards* v. *Shear,* 70 Cal. 187; *Walsh* v. *Mc-Menomy,* 74 Cal. 356.) I quote as follows from 70 Cal.: "It is said for the appellants that it was not the intent of the legis-

lature to subject the homestead to execution or forced sale in satisfaction of judgments obtained on debts secured by liens of mechanics and laborers who perform manual labor in and about the building, and withhold such privilege from the men who furnish material therefor.    We can see great force in the suggestion of Mr. Thompson, in his work on Homesteads and Exemptions, section 312, that there is no difference in principle between a debt due to A, who has provided me with the land upon which I have erected my building, and a debt due to B, who has furnished the materials to build it, and a debt due to C, whose labor has built it.    But where the legislature has undertaken to deal with the subject, and has declared from what the homestead shall be exempt, and with what it shall be charged, it only remains for the courts to give effect to its provisions.    Admittedly, the language of the section of the code specifying in what instances the homestead shall be subject to execution and forced sale does not include the liens of material-men.    The language is in satisfaction of judgments ' on debts secured by mechanics, laborers, or vendors' liens upon the premises.'    The chapter of the Code of Civil Procedure which provides for liens of the nature claimed by the plaintiffs is headed ' Liens of Mechanics and Others Upon Real Property,' and gives to ' mechanics, material-men, contractors, subcontractors, artisans, architects, machinists, builders, miners, and all persons and laborers of every class, performing labor upon or furnishing materials to be used in the construction . . . . a lien,' etc.    (Code Civ. Proc., § 1183.)"

I do not observe any marked distinction between the California statute and our own, nor can I agree that section 328 of our Code of Civil Procedure helps the contention that a pure material-man may enforce a lien against a homestead.    Section 323 of the Code of Civil Procedure provides that this homestead exemption shall not affect a laborer's or mechanic's lien. I think we all concede that the enforceability of the laborer's and mechanic's lien is intended to be saved by this section, even granting that my construction of the words "laborer" and " mechanic" is correct, and that those terms are not generic, so as to include all material-men.

Now, it is further suggested that the enforceability of liens,

including material-men's (such as plaintiff herein), is saved by the proviso of section 328, which is as follows: "*Provided,* That this act shall not be construed as to in any manner relate to judgments or decrees rendered on the foreclosure of mortgages, either equitable or legal." The construction of this proviso, as held by part of this court, makes the words, "mortgage, either equitable or legal," in section 328, to include material-men's liens. I cannot satisfy myself that such inclusion was intended. A mortgage is an encumbrance placed upon property by the acts of the parties, either expressly so intended by the parties or so construed by a court of equity. On the other hand, the mechanic's, or laborer's, or material-man's lien is given by virtue of an express statute. A mortgage is given by the debtor voluntarily, either expressly or by construction of equity. A mechanic's or laborer's or material-man's lien is secured against the debtor without his consent. A mortgage has the characteristic of a lien, in that it is a security upon property. A mechanic's lien is also a security on property, but it is not obtained by the voluntary act of the debtor. A mortgage is a lien, and something more. (1 Jones on Liens, §§ 2, 11.) I quote from those sections as follows: "The word 'lien' is here used in its legal and technical sense. Much confusion has arisen from using the word in a loose manner, at one time in its technical sense and at another in its popular sense. It is often convenient and proper to speak of the lien of a mortgage or of the lien of a pledge. Of course, it will often happen, when the word is used in this sense, that the description of the lien shows that the word is used merely to denote the charge or encumbrance of a mortgage, pledge, attachment, or judgment." SEC. 2. "A mortgage is sometimes inaccurately called a lien. 'And so it is,' says Mr. Justice Story, 'and something more; it is a transfer of the property itself as security for the debt. This must be admitted to be true at law, and it is equally true in equity, for in this respect equity follows the law. It does not consider the estate of the mortgagee as defeated and reduced to a mere lien, but it treats it as a trust estate, and, according to the intention of the parties, as a qualified estate and security. When the debt is discharged,

there is a resulting trust for the mortgagor. It is, therefore, only in a loose and general sense that it is sometimes called a lien, and then only by way of contrast to an estate absolute and indefeasible.' (*Conard* v. *Atlantic Ins. Co.*, 1 Pet. 386, 441.)" SEC. 11. I think that the intent of the proviso of section 328 was to treat of mortgages, as the language says, and not of the material-men's liens, which are not mentioned in terms, and which it is not necessary to include in the word "mortgage." In this view, the proviso of section 328 looks to the saving of a security created by the act of the party, namely, a mortgage. This seems wholly just. It is right that the debtor should not be relieved from a security which he had voluntarily created. But when the statute makes this sort of a declaration, I do not understand that we must also hold that, by the same language by which it retains the security of the voluntary mortgage, it also intended to retain the security of the involuntary mechanic's lien, which operates against the debtor *in invitum*, which was the creature of the statute, and not of the debtor.

The appellant cites us to *Phelps etc. Windmill Co.* v. *Shay*, 32 Neb. 19, as holding a view contrary to that which I entertain. All that is said in that case is as follows: "Section 3, chapter 36, Compiled Statutes, provides that 'the homestead is subject to execution or forced sale in satisfaction of judgments obtained: 1. On debts secured by mechanics, laborers, or vendors' liens upon the premises; 2. On debts secured by mortgages upon the premises, executed and acknowledged by both husband and wife or an unmarried claimant.' This section makes the homestead liable for a mechanic's lien." The matter is thus disposed of by the Nebraska court in one line of the opinion. Whatever good reasons that court had for its views are not disclosed by the opinion, which, therefore, does not give me any light. The cause of action in the Nebraska case was for supplying a windmill. The counsel in the case for the lienor put their claim upon the ground that it was for both labor and material, and that only pure material-men were excluded by the homestead exemption. That the claim was for both labor and material does not, however, appear in the statement of facts made by the court, nor in the meager expression of opinion as

to the law.   But if the Nebraska case<sub>o</sub>was, as counsel therein argued, one for material and labor both, then the case is not in conflict with the views which I suggest; and, if the case was one for material only, all that I can say is that the case was not sufficiently reasoned out to give me any satisfaction.

This matter was suggested in *Merrigan* v. *English*, 9 Mont. 126, and the 70 and 74 California cases were called to the attention of the court.   But the court held that those cases were not in point in *Merrigan* v. *English*, and said : "In each of the cases cited the court treated the lien as a lien for material alone.   In the first case cited the lien, as a matter of fact, was for material only.   We do not hold that a material-man has such a lien as will be valid against a homestead.   That is not the question before us."

I am therefore of opinion that the district court should be sustained in its finding that the premises were a homestead, and also in its conclusion that a pure material-man or lumberman cannot enforce a lien against a homestead.