In re CLARK COAL & COKE CO.

(District Court, W. D. Pennsylvania. October 13, 1909.)

No. 3,535.

1. BANKRUPTCY (§ 228*)—REFEREES—REVIEW OF PROCEEDINGS BY JUDGE.

Only such orders or findings of a referee in bankruptcy can be reviewed by the District Court as are asked to be reviewed by petition filed as prescribed by General Order No. 27.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 228.*]

2. BANKRUPTCY (§ 347*)—LIENS—POWER OF COURT TO DISPLACE.

A court of bankruptcy has no power to take the proceeds of mortgaged property of the bankrupt, which belongs to the lien creditor, to pay the expenses of the general estate, or the expense of conducting the bankrupt's business through a receiver or the trustee, without the consent of the lien creditor, express or implied.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 538; Dec. Dig. § 347.*]

3. BANKRUPTCY (§ 347*)—RIGHTS IN PROPERTY AFFECTED BY LIEN—ESTOPPEL OF LIENHOLDER.

A bank held the bonds of a bankrupt corporation, secured by mortgage on its property. The receiver in bankruptcy procured an order authorizing him to continue the bankrupt's business, and on his subsequent appointment as trustee obtained a further order to continue the business, on petition in which he showed a small profit from the previous operation and stated his belief that the business would at least hold its own. He made no further report for nearly a year, although the business was conducted at a large loss. Both orders were made without notice to the bank. *Held*, that it was not estopped by the fact that its attorney was also attorney for the receiver and trustee in procuring the orders, nor because its officers

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

may have had knowledge that the bankrupt's business was being continued, although not that it was losing money, to assert its claim to the proceeds of the mortgaged real estate, which was sold free of liens, as against the general expenses of the bankruptcy or the losses incurred in conducting the business.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 538; Dec. Dig. § 347.*]

4. BANKRUPTCY (§ 350*)—LIENS—PRIORITY.

Under the law of Pennsylvania, a mechanic's lien is entitled to priority in bankruptcy over a mortgage of the property of a private corporation, executed and recorded before the date of the lien, but given to secure bonds which were not issued until afterwards, and then delivered to a single creditor to secure a past indebtedness.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 350.*]

In the matter of the Clark Coal & Coke Company, bankrupt. Petition of the First National Bank of Pittsburg to review certain rulings of referee. Reversed in part.

G. C. Bradshaw, for petitioner.
Wm. C. Hall and S. G. Nolin, for receiver and trustee.

YOUNG, District Judge. This case comes before us upon a petition for review by the First National Bank of Pittsburg, a lien creditor. Upon the filing of this petition the referee certified the following questions as having arisen in the course of the proceedings before him:

"First. Whether, under the facts and circumstances set forth in the report and opinion of the referee on the account of the trustee and the exceptions thereto, the trustee should be allowed credits claimed aggregating the sum of $15,327.42.

"Second. Whether the claim of the bonds belonging to the First National Bank, or a certain mechanic's lien of the Freeport Planing Mill Company, is entitled to priority in distribution.

"Third. Whether certain taxes are a lien on the real estate of the bankrupt company, and entitled to priority of payment out of the funds now for distribution, being the proceeds of the sale of certain real estate."

Inasmuch as the First National Bank alone asked for review, and that upon the first two questions certified, we cannot now consider the question raised by the third question certified. The bankrupt act (Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]) provides for a review by the judge of orders or findings of the referee, and General Order 27 provides how this review shall be obtained, viz., by the aggrieved party filing with the referee his petition for review. This is the only method provided for obtaining a review. In re Russell (D. C.) 5 Am. Bankr. Rep. 566, 105 Fed. 501; In re Hawley (D. C.) 8 Am. Bankr. Rep. 632, 116' Fed. 428. As it does not appear by the record that any petition for review was filed with the referee, or that he was requested to certify the question to the court as to the taxes, the question raised by the third certified question will not be considered.

This leaves for our consideration two questions:

First. Whether, under the facts and circumstances set forth in the

report and opinion of the referee on the account of the trustee and the exceptions thereto, the trustee should be allowed credits claimed, aggregating the sum of $15,327.42.

Second. Whether the claim of the bonds belonging to the First National Bank, or a certain mechanic's lien of the Freeport Planing Mill Company, is entitled to priority in distribution.

The facts necessary to an understanding of the first question are as follows: The First National Bank of Pittsburg is the owner of certain bonds secured by a mortgage deed of trust duly recorded on April 12 and 13, 1905, almost two years before the filing of the petition upon which the mortgagor was adjudged a bankrupt. McCracken, the receiver appointed by the court to take charge of the bankrupt's business, on April 17, 1907, was permitted by the court, under the provisions of the act of 1898, to conduct the business of the bankrupt until the appointment of the trustee. No notice of this application was given to the First National Bank, and under this authority the business was continued. Upon June 27, 1907, McCracken, the receiver, having been appointed trustee, presented his petition to the court, setting forth that, not counting the depreciation of the plant and the interest charges, the concern had made $194.73, and that he believed that the property would at least hold its own. No notice of this petition was given to the First National Bank, and upon an order being made the trustee proceeded to carry on the business until the plant was sold by order of court on July 14, 1908. Upon April 13, 1908, the trustee presented his petition to the referee, and was permitted to borrow $1,200 upon certificates, for the purpose of paying pressing obligations, these certificates to be a prior lien to the other liens upon the real estate of the bankrupt. Notice of this petition was given to the First National Bank, and no objection was made by that bank to the priority of these certificates. Upon July 14, 1908, the real estate of the bankrupt was sold, discharged of all liens, for the sum of $20,668.64, after notice to all the lien creditors, including the First National Bank, upon application for leave to sell and without objection on the part of the First National Bank. It also appears from the record that Wm. M. Hall, Esq., was the counsel for the receiver, and was also counsel for the First National Bank, the lien creditor, during the time covered by the receivership and the trusteeship, and as counsel for the receiver and trustee represented him in the proceedings authorizing the operation of the bankrupt's business.

The trustee having filed his account, which included the proceeds of the sale of the real estate, it appears that the fund in the hands of the trustee is the proceeds of the sale of the real estate upon which the First National Bank claims to have the first lien by reason of the mortgage above set out. The trustee in his account claims credit for the general expenses of administering the estate and all the expenses incurred by him in carrying on the business of the bankrupt. The referee allowed all the expenses, both those generally incurred in administering the estate and those incurred in carrying on the business, as a credit to the trustee, and thus wiped out all the lien of the First National Bank except about $1,500.

This is the error complained of in the first question certified to us. The referee based his findings that the exceptions of the First National Bank to the allowance of the expenses of running the business should be dismissed, upon the fact, as found by him, that because the bank knew of the bankrupt's financial condition, that the business was being carried on, and that because counsel for the receiver and trustee was also counsel for the lien creditor, although he did not appear as counsel for the lien creditor in any of the petitions or orders for leave to run the business, he must be presumed to have acted for the interest of all whom he represented. This appears from his record and opinion:

"It appears by the record, that William M. Hall, Esq., was the attorney for the Industrial National Bank, the original holder of the bonds of the bankrupt company, and, after the merger of the Industrial National Bank in the First National Bank, represented the First National Bank in the proceedings taken in the year 1906 by the bankrupt company to validate the bonds irregularly issued by the bankrupt company and held by the First National Bank. It further appears that Mr. Hall, up until the time of the filing of the exceptions, appeared in the bankruptcy proceedings as counsel for the First National Bank; that Mr. Hall presented the petition for the appointment of the receiver, and also for the order authorizing the operation of the business of the bankrupt by the receiver, and subsequently for the order authorizing the operation of the bankrupt's business by the trustee. Thus Mr. Hall represented, not only the receiver and the trustee during the period of his receivership and trusteeship, but also the bank. It further appears that the petition for the issuance of the receiver's certificate to the amount of $1,200 was presented by Mr. Hall, and was duly served upon all lien creditors; the record showing that the service on the First National Bank was upon Mr. Richards, the cashier of said bank, and that no objection was made by the bank.

"It is argued by counsel for the exceptant, who appears to have succeeded Mr. Hall as counsel for the First National Bank, at the time the exceptions were filed, as already stated, that the bank is entitled to have its lien paid without diminution, except as to the sum of $1,200 represented by the loan made as if upon receivers' certificates, as being the only expenditure acquiesced in by the First National Bank. It is true that, with this exception, there is no evidence, either affirmatively or negatively, as to knowledge by the bank or its officers of the operation of the business, other than such as may be inferred from the fact that the counsel of the bank was, all through such operation, the counsel for the receiver and trustee. But it is clear from the evidence in the case that the bank officers were perfectly familiar with the bankrupt's financial condition and had full knowledge of the bankruptcy. There is no denial that they knew the bankrupt's business was being carried on; indeed, the account shows at least one note discounted by the trustee at the bank during such operation.

"The counsel of the receiver and trustee, who obtained the orders authorizing the operation of the business, was also counsel for the bank. He must be presumed to have acted for the interest of all whom he represents. It is not credible, in the absence of evidence, that he would act against his clients' wishes and consent. Both the bank and the trustee knew that Mr. Hall represented the other, and the record informed the referee, when the order for operation was made, that he represented both. The sale of the property was ordered not long after the order to operate, and notice thereof given to the bank. When the sale was adjourned repeatedly, the mortgage creditor was bound to know it, and to know that the business was being carried on. I am unwilling to hold that the bank could shut its eye to what its trustee was doing in its behalf, and take the chances of benefit therefrom, without obligation for losses. When, in April, 1908, it was necessary for the trustee to borrow money to pay the laboring men at the mines, no objection was made by the bank. If it were no party to the operation of the plant, it was bound to

object. That it did not object is convincing evidence that it regarded itself under obligation in the premises.

"The referee fully recognizes the soundness and importance of the rule that a trustee must keep within his resources or take the consequences, and that obligations on creditors in such cases should be most cautiously imposed; yet in this case the trustee appears to have been merely performing his duty as he was ordered by the bankruptcy court upon the application of counsel, who was also the counsel of the bank. It may be that the referee should have required the record to show more precise notice to the bank, as a lien creditor, before making the order for operating the business of the bankrupt in this case, as it is his standing rule to do so; but this is not sufficient reason to charge a faithful trustee as is sought in the exceptions."

While it may be said, as against the referee's conclusion of fact, that it appears from the record and evidence that, when the receiver first applied to the referee on April 16, 1907, for leave to operate the plant, he set out in his petition that he believed that no money would be lost by running the plant, and afterwards, in presenting his petition to the referee on June 27, 1907, set out in his petition that by conducting the business he had earned $194.78 above the expenses of running the plant, and that he believed the property would at least hold its own, which statements the lien creditor had a right to rely on, and that it also appears from the record and the evidence that the trustee did not again show to the court the losses which he was making by running the plant, and that there is not any evidence from which it could be inferred that either the lien creditor, or Mr. Hall, its attorney, knew that the plant was not earning money under the management of the trustee, although it must be inferred that the trustee well knew that fact; yet, assuming that the conclusion of the referee, namely, that the lien creditor knew that the plant was being operated, and that Mr. Hall, as counsel for the trustee, knew that fact also, we cannot agree with the referee's conclusion of law that those facts, found by him, would shut out the lien creditor from claiming the fund upon the theory that it acquiesced in the operation of the plant, and was thus estopped, either by its own knowledge or that of its counsel. Unless the lien creditor came into court, or was brought into court by regular process, and consented to the operation of the plant, or unless the facts would warrant the conclusion that it was under such circumstances as would estop the lien creditor that the business was continued, the lien creditor could not be displaced and the property covered by his lien swept away from him.

The only authority for continuing the business of the bankrupt is found in section 2 of the bankrupt act:

"Authorize the business of bankrupts to be conducted for limited periods by receivers, the marshals, or trustees, if necessary in the best interests of the estates."

There are no other words in the act or its amendment authorizing or regulating the conduct of the business of a bankrupt. There is a bare authority here given the court to allow the business of the bankrupt to be conducted. There is no provision for the payment of the expenses, or for the issuance of receivers' certificates to pay the expenses, although, no doubt, the court would have power to order the expenses paid out of the general estate, or, if the lien creditor was

properly in court and consented, could give the certificates or expenses priority over the lien. But that with this slight power, and in the face of section 67d, "that liens given or accepted in good faith should not be affected by the act," a court of bankruptcy, without notice, can take the money of a lien creditor to pay the expenses of the general estate, or provide a fund for distribution among the general creditors, does not appear to us to be sound. It is true that the bankrupt court is a court of equity, and that it may be argued that whatever a court of equity could do in like circumstances it may do, and that the authorization of receivers' certificates in bankruptcy is akin to the power of a court of equity in authorizing receivers' certificates for insolvent corporations. Nevertheless it was decided, in Fosdick v. Schall, 99 U. S. 235, 25 L. Ed. 339, and Kneeland v. American Loan Company, 136 U. S. 97, 10 Sup. Ct. 950, 34 L. Ed. 379, that it is because the property is of a public nature and because the public interest requires the operation of the concern, such as a railroad or other public service corporation, that the court will authorize the issuance of receivers' certificates to have priority over existing lien creditors.

It has been equally definitely settled that in the case of a private corporation no such authority or power resides in the courts. The following are cases sustaining this view: Hanna v. State Trust Co., 70 Fed. 2, 16 C. C. A. 586, 30 L. R. A. 201; Farmers' Loan & Trust Co. v. Grape Creek Coal Co. (C. C.) 50 Fed. 481, 16 L. R. A. 603; Newton v. Eagle & Phœnix Mfg. Co. (C. C.) 76 Fed. 418; Kneeland v. American Loan Co., 136 U. S. 97, 10 Sup. Ct. 950, 34 L. Ed. 379, where Mr. Justice Lamar said:

"Upon these facts we remark, first, that the appointment of a receiver vests in the court no absolute control over the property and no general authority to displace vested contract liens. Because in a few specified and limited cases this court has declared that unsecured claims were entitled to priority over mortgage debts, an idea seems to have obtained that a court appointing a receiver acquires power to give such preference to any general and unsecured claims. It has been assumed that a court appointing a receiver could rightfully burden the mortgaged property for the payment of any unsecured indebtedness. Indeed, we are advised that some courts have made the appointment of a receiver conditional upon the payment of all unsecured indebtedness in preference to the mortgaged liens sought to be enforced. Can anything be conceived which more thoroughly destroys the sacredness of contracted obligations? One holding a mortgage debt upon a railroad has the same right to demand and expect of the court respect for his vested and contracted priority as the holder of a mortgage on a farm or lot. So, when a court appoints a receiver for railroad property, it has no right to make that receivership conditional on the payment of other than those few unsecured claims which, by the rulings of this court, have been declared to have an equitable priority. No one is bound to sell to a railroad company or to work for it, and whoever has dealings with a company whose property is mortgaged must be assumed to have dealt with it on the faith of its personal responsibility, and not on the expectation of subsequently displacing the priority of the mortgage liens. It is the exception, and not the rule, that such priority of liens can be displaced. We emphasize this fact of the sacredness of contract liens, for the reason that there seems to be growing an idea that the chancellor, in the exercise of his equitable powers, has unlimited discretion in this matter of the displacement of vested liens. Railroad Co. v. Railway Co., 125 U. S. 658, 673, 8 Sup. Ct. 1011, 31 L. Ed. 832. So that these interveners acquired no right of priority by virtue of their antecedent contracts of sale."

But, assuming that there is authority for the issuing of receivers' certificates in this case; and that the power to issue such certificates. would include the power to pay the expenses of running the plant just as if those certificates had been authorized, was the lien creditor estopped by either his own conduct or that of his counsel from claiming the priority of his mortgage over the expenses? Estoppel is defined by Bigelow on Estoppel (4th Ed.) 445, as follows:

"A right arising from acts, admissions, or conduct which have induced a change of position in accordance with the real or apparent intention of the parties against whom they are alleged."

It was said in Nowell v. International Trust Co. (C. C. A.) 169 Fed. 508:

"Before an estoppel can arise, it must appear that the person invoking it has been influenced by and would rely upon the acts or conduct of him who is sought to be estopped, and that these acts and conduct were sufficient to warrant reliance and action thereon."

The receiver or trustee takes the property of the bankrupt subject to all the equities that existed as against the bankrupt. All that he may sell is the equity of redemption. York Mfg. Co. v. Cassell, 201 U. S. 344, 26 Sup. Ct. 481, 50 L. Ed. 782. In the case at bar the receiver took the manufacturing plant and real estate of the bankrupt subject to the mortgage deed of trust, the bonds of which the First National Bank now claims to hold. He knew the condition of the business, of its finances, of its clay and coal veins, of its machinery and equipment, of its manufactured, partly manufactured, and unmanufactured product. He knew of the probable expenses of running the plant when he first applied for instruction to the referee to conduct the business, and in his petition swore to his belief that the conduct of the business would not cause loss. Would the fact that the lien creditor only knew that the business was being continued, there being no proof that he knew any of the facts as to gains or losses, or any of the other facts as above noted as known to the trustee, in any way influence the action of the trustee in continuing the business? Would the knowledge of the trustee that the lien creditor knew the business was being continued lead this trustee, with all the knowledge he had, to conclude that the lien creditor was willing to give up his rights and all the property covered by his lien to the trustee for the benefit of the general creditors? Where in the evidence is there any fact, where is there any evidence, from which it may be inferred that the trustee was influenced by or would rely on the lien creditor waiving his lien in favor of the administration or running expenses?

We are clearly of the opinion that the referee erred in allowing the general expenses, in any view of the case, against the lien creditor. We are also clearly of the opinion that there is nothing in the record or evidence that would justify the charging of the expenses of running the business against the proceeds of sale, except as to the $1,200 receivers' certificates and such actual costs and expenses as are directly chargeable to the sale of the real estate, and the referee, therefore, erred in allowing any expenses except these as a priority over the lien creditor.

The second question certified under the petition of review was as to whether or not the mechanic's lien of the Freeport Planing Mill Company is a prior lien to the mortgage of the First National Bank. The finding of the referee is that the mechanic's lien is entitled to priority of lien; but as the referee has not given us any findings of fact, or any discussion of the question, whether of fact or law, or any distinct finding of fact or conclusion of law, except that the mechanic's lien is entitled to priority, we are in complete ignorance of the reason governing the referee in his conclusion. Proper consideration of this question requires an examination of the mortgage in question, of the evidence as to the filing of the mechanic's lien and as to the commencement of the work for which the lien is claimed, of the evidence as to whether or not the mortgage was for future advances, and, if so, when the payments were actually made to the mortgagor, and possibly of many other facts necessary to a correct conclusion. We have a right to expect from a referee, who has had the whole question submitted to him, and has seen the witnesses and heard the evidence, that he should give the court the benefit of his investigation, and assist the court in its investigation by making a proper report, discussion, and opinion leading him to his conclusion. However, as the whole case has been argued, we feel it to be our duty to decide this question now, rather than to delay the final decision by returning the case to the referee.

The exact question before us is whether the mortgage deed of trust of the bankrupt to the Guaranty Title & Trust Company to secure the issue of $200,000 of bonds, dated April 1, 1905, and duly recorded on April 12 and 13, 1905, is a prior lien to the mechanic's lien filed by the Freeport Planing Mill Company against the bankrupt's real estate, and which concededly has the date of May 1, 1905. The Planing Mill Company claims that its lien is prior, because the mortgage was given to secure moneys to be paid in the future. It must be conceded that the law of Pennsylvania is that a mortgage for future advances is not good against intervening liens before the money is advanced upon the mortgage. Bank of Montgomery County's Appeal, 36 Pa. 170; Appeal of the Bank of Commerce, 44 Pa. 423; and many other cases. An exception has been made in the case of the borrowing of money upon bonds to secure which a mortgage is given. The case of Reed's Appeal, 122 Pa. 566, 16 Atl. 100, is authority for this position. There the learned court, afterwards affirmed by the Supreme Court, said:

"A reason of more substance is found in the nature of the bonds and their relation to the mortgage. Where a mortgage is given to cover future advances by one man to another, it is not a matter of much inconvenience for the mortgagee to ascertain, from time to time, as he is called on for advances, whether there be intervening liens. It is therefore reasonable and just that he should do so, and is in harmony with the purpose of the mortgage. But a different case is presented where a public improvement is undertaken, requiring the expenditure of large sums of money and the floating of a debt of great magnitude. The debt is necessarily divided into small parts and carried into different and distant markets. It would be out of the question to ascertain the state of the record or of the company's affairs each time a bond was about to be sold. If this were made the duty of purchasers, it would prevent the sale of such securities altogether, or at least confine their purchase to such large concerns as could buy in bulk after due and careful inquiry. Even then the

facts would be open to doubt at every subsequent sale. Thus their value would be entirely reduced. For these and similar reasons 'the whole issue of such bonds must be treated as of the date of the mortgage, without regard to the time when they were actually put out, unless the contrary is clearly expressed.' Claflin v. Railroad Co. (C. C.) 8 Fed. 118, 4 Hughes, 12, 23; Nelson v. Iowa Eastern R. R. Co., 8 Am. Ry. Rep. (Shipman) 82, 88."

Under the facts of the case at bar, we do not think the exception obtains. This was not the case of borrowing money for a public improvement. It was not the case of the issuance of bonds which were disposed of to the public. The bonds, as appears from the finding of the referee, were delivered by the bankrupt corporation in November, 1905, months after the entry of the mechanic's lien upon the record, and for the purpose of securing a past indebtedness. Under these facts we can see no distinctior between the lien of this mortgage and a mortgage given to secure future advances. We therefore conclude that the lien of the Freeport Planing Mill Company is prior to the mortgage.

The finding of the referee is therefore reversed as to the expenses of the receiver, and all his credits are disallowed, except those covered by the receivers' certificates to the amount of $1,200, if such be otherwise a proper credit, and the actual expenses incurred in the sale of the real estate.

. The finding of the referee that the mechanic's lien of the Freeport Planing Mill Company is prior to the mortgage securing the bonds held by the First National Bank is sustained, and said lien declared to be prior to said mortgage.

The case is returned to the referee, with instructions to find, in accordance with this opinion, that the mechanic's lien of the Freeport Planing Mill Company is prior to all other claims except the expenses of sale and the receivers' certificates, and that the First National Bank, as to the bonds secured by the mortgage, is entitled to the balance of the fund raised by the sale of the real estate.

Let an order be drawn accordingly.

