### COWAN v. BURCHFIELD.

#### In re GWIN.

(District Court, N. D. Alabama, W. D.   August 1, 1910.)

Nos. 12, 144.

1. BANKRUPTCY (§ 175*)—FRAUDULENT TRANSFERS.

Where a bankrupt by deeds conveyed his realty simultaneously as part of a scheme to put it beyond reach of his creditors, in view of his imminent and inevitable bankruptcy, and the grantees knew or should have

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

known of such intent, and kept the conveyances from record with the intent to assist in its accomplishment, the conveyances should be set aside.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 247; Dec. Dig. § 175.*]

2. BANKRUPTCY (§ 396*)—HOMESTEAD EXEMPTION—PROPERTY CONSTITUTING.

Where one lived with his family on premises on which his store was situated, the lot being used by him at least as much for homestead as for business purposes, and not incidentally only as a homestead, it should be considered as his homestead.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 668; Dec. Dig. § 396.*]

3. BANKRUPTCY (§ 179*)—FRAUDULENT TRANSFERS—CONVEYANCE OF HOMESTEAD.

The conveyance, in view of inevitable bankruptcy by one of his homestead, could not operate as a fraud on creditors, as they were not entitled to subject such land to payment of their claims if it had not been so conveyed.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 179.*]

4. BANKRUPTCY (§ 400*)—SETTING ASIDE BANKRUPT'S EXEMPTIONS OUT OF RETAINED ASSETS.

Under Code Ala. 1907, §§ 4183, 4184, an execution debtor in claiming his exemption after levy of execution or attachment is required to schedule all his personalty and deliver it to the officer, and that not claimed as exempt is to be sold by the officer under the writ. Upon contest of the debtor's exemption, if he is shown to have other personalty not scheduled and not delivered to the officer, it is the court's duty to set aside his exemption from such property shown to have been omitted by him, and undelivered, so far as it will reach, thus releasing from the claim the property or a corresponding part of it, selected by the debtor. *Held*, that the same rule applies in bankruptcy proceedings, the filing of the petition in bankruptcy operating as a levy, and the filing by the bankrupt of a schedule, being analogous to the filing of the schedule with the levying officer, and the failure to list and surrender to the trustee in bankruptcy assets not claimed operates as a selection of such unsurrendered assets, leaving claimed assets in the possession of the trustee in the same amount, subject to the bankruptcy proceeding.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 671–675, Dec. Dig. § 400.*]

5. BANKRUPTCY (§ 396*)—HOMESTEAD EXEMPTION.

A man purchased 160 acres of land on which was a dwelling house, but he did not actually occupy the premises until after his receiver in bankruptcy had taken possession of his store and dwelling, where he was residing at the time, and it appeared that he purchased the premises with the intention of occupying them at some future time, and had delivered on the land some hardware which he testified was to be used for repairing the premises; the fair inference from the evidence being that he purchased the land for a refuge if and when his then residence and business should be interfered with by creditors, and that so long as his creditors permitted him and his wife to carry on his business at his joint store and dwelling it was his intent to reside there and not upon the land which he claimed as a homestead. *Held*, that the character of his occupancy was not such as to render the premises exempt as his homestead.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 668; Dec. Dig. § 396.*]

Action by A. S. Cowan, trustee in bankruptcy of J. M. Gwin, against Walter H. Burchfield. Petition to review order of referee

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

disallowing bankrupt's exemption. Decree for complainant and report of referee disallowing homestead exemption, modified.

London & Fitts, for trustee.
Lee Cowart, for bankrupt.

GRUBB, District Judge. These two matters arising out of the same bankruptcy proceeding were submitted together for decision, and are so related to each other as to make one opinion cover both.

The bankrupt had conducted a small mercantile business at Kellerman, Ala., for seven years before the filing of the petition, and, with his family, had lived on the premises where one of his stores was located. His patrons were principally coal miners; Kellerman being the location of a coal mine. Prior to July 1st there had been a strike at this coal mine, and its existence had embarrassed the bankrupt by diminishing his trade and delaying his collections. The evidence taken before the referee upon the bankruptcy hearings, which, by agreement, is to be used in the plenary suit, together with the independent evidence, is convincing that the bankrupt, foreseeing financial embarrassment about July 1st, from then until the filing of the petition against him, was preparing himself for it by transferring his real estate to others, and reducing his merchandise to cash by selling it and collecting for it to as great an extent as possible.

On July 1st he executed four deeds to substantially all his real estate. One was executed to his brother to secure an alleged debt, not otherwise evidenced in writing; two were executed to his clerk and kinsman partly to pay an alleged debt and partly for an alleged present consideration of $440; and one for an alleged present consideration, to the brother of his clerk, who was also his kinsman. The two latter were young men of little business experience and of no means except whatever consideration, if any, was paid by them. The bankrupt by these conveyances divested himself of even the property on which was located his dwelling and stores. Pressing need of money by the bankrupt is claimed to have been the reason for the transfers; but this would not account for the conveyance to his brother, from whom he got no cash. None of the deeds were placed on record by the grantees until about the time of the filing of the petition against him early in December. The uncertainty shown by the evidence of two of the grantees as to the amount of the consideration paid by them for the conveyances is inconsistent with the existence of a serious transaction between the bankrupt and themselves. The considerations were also inadequate. The trustee filed a plenary bill in the District Court to set aside the four conveyances as made with intent to defraud creditors and for simulated or inadequate considerations, making the grantees parties.

The validity of the four conveyances as against the trustee is the question presented by the plenary suit.

The petition for review relates to the bankrupt's exemptions.

From July 1st the only attention given by the bankrupt to his business was that of traveling around the country making collections, and, though his oral testimony is to the effect that his efforts were unsuc-

cessful, his books show that a considerable amount was collected. The referee, taking August 1, 1909, as a basing point, calculated that the bankrupt failed to account to the trustee for from $800 to $1,600 of assets that he should have been in possession of when the petition was filed against him. This estimate was arrived at by taking into consideration the amount of his stock and accounts on August 1st, as compared with the inventory of the receiver. The referee also found that the bankrupt, after November 12, 1909, actually collected $516.62, and paid out subsequently but $127.06, leaving a balance collected and not disbursed of $389.58. The petition was filed December 2d. No money was turned over to the trustee by the bankrupt. The trustee set aside to the bankrupt as exempt specific property of the value of $225, which left a balance of $775 due him on his personal property exemption, which the trustee satisfied by allowing it to him from assets found by the referee to have been in his possession at the time the petition was filed and not surrendered to the trustee. The trustee also disallowed his claim of exemption to a piece of land purchased by him on November 12th, upon the ground that he was not occupying it at the time of the filing of the petition as required by the Alabama exemption statute. The land was purchased about three weeks before the filing of the petition, and the bankrupt did not move upon it until after the receiver in the bankruptcy proceedings had taken possession of his store in part of which he lived. The evidence showed that he bought the land with the intention at some time in the future of making it his home, and that before the petition was filed he had caused some hardware to be delivered on the land, for the purpose of making repairs on it. No other evidence of occupancy or intention to occupy is shown in the record. The referee confirmed the report of the trustee setting aside the bankrupt's exemptions, and the bankrupt seeks to review this order by his petition.

The conclusion of the court, from the facts in the record of the plenary suit, is that the bankrupt made all four conveyances simultaneously as part of a scheme to put his real estate beyond the reach of his creditors in view of his imminent and inevitable bankruptcy, and that the grantees knew or should have known of such intent, and that they kept the conveyances from record with the intent to assist in its accomplishment, and that all the conveyances should be set aside except that conveying the land on which the bankrupt lived with his family at the time of the conveyance. The evidence shows that this lot was used by the bankrupt at least as much for homestead as for business purposes, and not incidentally only as a homestead, and should be considered as the homestead of the bankrupt. Marx v. Threet, 131 Ala. 344, 30 South. 831. If considered the homestead of the bankrupt, the conveyance of it could not operate as a fraud on creditors, since they would not be entitled to subject the land to the payment of their claims, if it had not been so conveyed. Pollak v. McNeil, 100 Ala. 203, 13 South. 937; Kennedy v. Bank, 107 Ala. 170, 18 South. 396, 36 L. R. A. 308; Bank of Talladega v. Browne, 128 Ala. 560, 29 South. 552.

In the plenary suit a decree will be entered setting aside the conveyances, except as to defendant, Walter H. Burchfield, of the home-

stead tract, and ordering respondents to surrender possession to trustee.

The petition for review presents three questions for decision: (1) Did the bankrupt withhold from the trustee assets of which he was in possession when the petition was filed against him, and in what amount? (2) Is it proper that such assets as he may be shown to have withheld from the trustee should be set aside under the statutes of Alabama as part of his personal property exemption? (3) Is the bankrupt entitled to a homestead exemption in the tract of land purchased by him on November 12, 1909?

1. The referee found that the bankrupt did withhold assets from the trustee in amount in excess of the balance of his personal property exemption, after deducting the specific articles selected by him. This finding is based on a statement of the business from August 1, 1909, to the date of the bankruptcy, December, 1909, ascertained by charging him with the approximate amount of stock and accounts on that date and thereafter acquired, and crediting him with subsequent disbursements and the receiver's inventory. The referee also arrived at a somewhat different result by a finding of the amount collected in money as shown by the bankrupt's books after November 12, 1909, and crediting him with subsequent disbursements. The latter method is the more accurate, as it eliminates all reference to the amount of stock and accounts, which is a matter of unsatisfactory estimate. By the latter method, it seems free from practical doubt that the bankrupt had in his possession at the time of the filing of the petition against him $389.58, which he failed to surrender to the trustee.

2. The inquiry then arises whether the bankrupt's exemption should be set aside to him pro tanto from this amount. The bankrupt contends that his failure to surrender assets or his fraudulent disposition of them is no excuse for disallowing him his exemptions, and cites the case of In re Park (D. C.) 102 Fed. 602, in support of this proposition. In that case the referee declined to allow the bankrupt any exemption because he had not accounted for all of his assets, and was in possession of assets which he had not turned over, to the trustee. In this case the referee allowed the bankrupt his personal property exemption, setting aside specific property in part satisfaction thereof, and the assets found by him to have been in the possession of the bankrupt unsurrendered to satisfy the balance. No attempt was made to penalize the bankrupt for his wrong by denying to him his exemptions. He was entitled to a money exemption of $775. The referee found that he had that much money of the estate in his possession which it was his duty to pay to the trustee. It would be a futile thing for the court to order the trustee to pay to the bankrupt this $775 as his partial exemption, and immediately order the bankrupt to pay back a like amount to the trustee, because of the bankrupt's failure to surrender that amount of assets upon the filing of the petition. It would seem worse than futile, since a higher degree of proof than that exacted in civil cases is requisite to an order directed to the bankrupt to surrender assets, which is a quasi criminal order, enforceable only by imprisonment as for contempt. The liability of the bankrupt to

the trustee to surrender his assets is a civil liability, though, owing to the bankrupt's insolvency, one enforceable only in such a quasi criminal proceeding and one which requires proof beyond all reasonable doubt. The injustice to the estate of requiring the trustee to set aside the bankrupt's exemption out of assets in his possession, under such circumstances, is clear, and would prevent the adoption of such a rule in the bankruptcy court, in the absence of a declaration to the contrary in the state exemption laws. The exemption laws of Alabama, however, cover the case. By Civ. Code Ala. 1907, §§ 4183, 4184, the execution debtor in claiming his exemption after levy of execution or attachment is required to schedule all his personal property and deliver it to the officer. That not claimed as exempt is to be sold by the officer under the writ. Upon contest of the debtor's exemption, if he is shown to have other personal property, not scheduled and not delivered to the officer, it is the duty of the court to set aside his exemption from such property shown to have been omitted by the debtor and undelivered, so far as it will reach, thus releasing from the claim the property or a corresponding part of it selected by the debtor. The filing of the petition in bankruptcy operates as a levy. The filing of the bankrupt of his schedule is analogous to the filing of the schedule with the levying officer under the state law. The result in each instance should be the same, viz., that the failure to list and surrender to the levying officer or the trustee respectively assets not claimed should operate as a selection of such unsurrendered assets leaving claimed assets in the possession of the levying officer or trustee in the same amount, subject to the writ or bankruptcy proceeding.

3. The bankrupt claimed as his homestead 160 acres of land in Jefferson county, Ala., purchased by him from one Fox on November 12, 1909, for $2,600, on which he paid $600, giving a mortgage for the balance. There was a dwelling house on the property, but he did not actually occupy the premises until after the receiver in bankruptcy had taken possession of his store and dwelling lot in Kellerman. The evidence shows that he bought the premises with the intention of occupying them at some future time. It also shows that he had delivered on the land some hardware which he testified was to be used for repairing the premises.

The case of Blum v. Carter, 63 Ala. 235, is relied on by the bankrupt. The facts of that case are very like those of this case. The principle which furnishes the test of the kind of occupancy necessary is formulated in these words:

"Guided by these principles, we hold that, to constitute a valid claim of homestead, there must be an occupancy in fact, or a clearly defined intention of present residence and actual occupation, delayed only by the time necessary to effect removal, or to complete needed repairs, or a dwelling house in process of construction. An undefined floating intention to build or occupy at some future time is not enough. And this intention must not be a secret, uncommunicated purpose. It must be shown by acts of preparation, or by something equivalent to this."

Conceding that the placing of material on the premises to be used in their repair was sufficient visible evidence of preparation for oc-

cupancy, the evidence in this case does not disclose "a clearly defined intention of present residence and actual occupancy delayed only by the time necessary to effect removal, or complete needed repairs, or a dwelling house in process of construction." The fair inference to be drawn from the record as to the bankrupt's intention is that he purchased the land for the purpose of making it a refuge if and when his then residence and business should be interfered with by creditors. So long as his creditors permitted him and his wife to carry on his business at his joint store and dwelling in Kellerman, it was his intention to reside there, and not upon the land which he claimed as a homestead. This constitutes "an undefined floating intention to build or occupy at some future time," which is held to be "not enough," rather than the "clearly defined intention of present residence and actual occupation, delayed only by the time necessary to effect removal or to complete needed repairs," which is held sufficient by the Alabama court.

The report of the referee, so far as it disallows the homestead exemption, is confirmed; and, so far as it sets aside as part of the bankrupt's personal property exemption $775 of assets, found by the referee to have been withheld from the trustee by the bankrupt, is so modified as to allow the bankrupt, as exempt, out of funds in the possession of the trustee the sum of $385.42, being the balance of his personal property exemption, after deducting the value of specific articles selected by him, and the amount found by the court to have been withheld by him from the trustee.