## In re WALSER.

### Petition of FIRST NAT. BANK OF CAPE GIRARDEAU, MO.

District Court, E. D. Missouri, S. E. D. May, 1927.

1. **Bankruptcy ⬅➡228(6)—Petition' for review of referee's order must be filed within reasonable time.**

Petition for review of order by referee in bankruptcy must be filed within a reasonable time after entry of order of which review is sought.

2. **Bankruptcy ⬅➡228(6)—Order of referee can be set aside, vacated, or annulled only by petition for review timely filed (General Rules in Bankruptcy, rule 27).**

Only method by which the order of a referee in bankruptcy can be set aside, vacated, or annulled is by petition for review timely filed, in accordance with General Rules in Bankruptcy, rule 27.

3. **Bankruptcy ⬅➡228(6)—Motion to vacate referee's order, made after 11 months, cannot be sustained, though equivalent to petition for review.**

Motion to vacate an order of referee in bankruptcy, made 11 months before filing of such motion, cannot be sustained, even though motion is construed as equivalent to petition for review.

4. **Bankruptcy ⬅➡398(3)—Holder of deed of trust had lien on property constituting bankrupt's homestead.**

Holder of deed of trust on property including homestead of bankrupt had a subsisting valid lien on so much thereof as constituted homestead.

5. **Bankruptcy ⬅➡398(3)—Trustee paying bankrupt value of homestead' necessarily set apart will be required to repay estate, and pay value of homestead to holder of deed of trust.**

Where trustee, after order by referee necessarily setting aside bankrupt's homestead, paid to bankrupt the adjudged value of homestead before sale of property, trustee will be required to repay to the estate such sum unlawfully paid to bankrupt, and to pay to holder of deed of trust on such property the sum paid bankrupt as homestead value out of estate in hands of trustee.

In Bankruptcy. In the matter of the bankruptcy of D. F. Walser. On petition of the First National Bank of Cape Girardeau, Mo., for an order requiring the trustee to pay over to said bank the sum of $1,500 pursuant to an order of the referee, and on motion of Herman Lufcy, trustee, to vacate an order of the referee therein. Petition granted, and motion overruled.

Benson C. Hardesty, of Cape Girardeau, Mo., for petitioner.

O. A. Knehans, of Cape Girardeau, Mo., for movant.

FARIS, District Judge. Some of the matters here involved and presented seem to me to be anomalous, and about which I have found no authority on some of the questions presented. These anomalous matters are exemplified by the below facts and chronology:

On April 2, 1924, D. F. Walser was adjudged a bankrupt. On April 26, 1924, Herman Lufcy was appointed trustee of the bankrupt estate, and on May 2, 1924, he duly qualified, and now is such trustee. The bankrupt filed his schedules, and listed among his assets certain town lots, subject to a deed of trust to Dameron and Blue, which, with the debt secured thereby, was subsequently assigned to petitioner, First National Bank of Cape Girardeau, Mo. This deed of trust was made on December 24, 1923, and duly recorded and secured payment of the sum of $8,133.33. The lots in question included the homestead of the bankrupt, which he claimed as exempt in his filed schedules.

Thereafter, and on June 13, 1924, *upon the petition of the trustee,* an order was made by the referee, requiring the First National Bank, petitioner herein, to show cause why said lots and homestead should not be sold free and clear of the lien of the deed of trust, and thereafter on July 19, 1924, petitioner filed its written consent to the making of such sale; that is, that the lots which included the homestead should be sold "free and clear of all liens and demands thereon, and that the proceeds arising from the sale of said real estate be held by the said trustee, subject to the claims, liens, and demands of the holders of certain alleged deeds of trust, and that the proceeds be held subject to said liens, demands, and deeds of trust, with the same force and effect as if on the property itself," subject to the final order of the court touching the validity, good faith, and extent of such liens.

Pursuant to such consent of the petitioner, the referee on August 13, 1924, made an order on the trustee to sell the mortgaged lots in question, "free of and from the lien of said mortgages described in the trustee's petition, * * * the proceeds of and from the sale of said property to be held by the trustee subject to the lien of said mortgages, or other liens, to all intents and purposes as though the said property had not been sold, subject to the final order, judgment, and decree of this court, or by final order, judgment, and decree of a court of competent jurisdiction."

On August 21, 1924, the trustee filed with the referee a schedule of property claimed by the bankrupt as exempt, in which list and schedule the item, "Cash, in lien of home-

stead, as claimed, $1,500," appeared. Thereafter, on October 9, 1924, the referee entered this order, to wit: "The trustee's report of exempted property coming on to be heard, and there being no objection to same, and the court having been fully advised in the premises, it is ordered that said report of the trustee, setting apart to the bankrupt the property described therein, be and it is hereby in all things approved, and that the property therein described be and the same is hereby set apart to the bankrupt, to be retained by him as his own property, under the provisions of the act of Congress relating to bankruptcy."

On the next day, to wit, October 10, 1924, the trustee gave a check to the bankrupt in the sum of $1,800, which included the homestead, of the value of $1,500, plus a personal exemption of $300. This check the bankrupt proceeded without undue delay to collect, and the proceeds whereof the bankrupt seems yet to have and hold. On the day after the delivery of this check to the bankrupt, the trustee, on, to wit, the 11th day of October, applied for an order to sell the mortgaged lots, including the homestead, at private sale, and on the same day the referee entered an order of private sale for such lots, free and clear of all liens and incumbrances. This order of sale, with reference to the proceeds and to their disposition, provided, inter alia, thus: "The trustee shall deposit the said sum with the First National Bank of Dexter, a designated and bonded depository of the court, and keep an accurate account thereof and file the same with this court, to the end that a reasonable opportunity may be afforded for adjusting, by compromise or litigation, the claims of the said lienors, who have heretofore filed herein their written consent for said property to be sold free and clear of liens."

On October 21, 1924, the petitioner, First National Bank, filed its proof of secured claim in the sum of $8,133.33, bottomed, as already forecast, on the deed of trust on the lots in controversy, which included the homestead. This was within the time fixed by statute, and so no valid complaint can be based on delay. This deed of trust was executed less than four months before bankruptcy, and its invalidity in part was conceded; but the question arose as to whether it was a valid and subsisting lien on the homestead of the bankrupt. After much and inexcusable delay, the matter came on for hearing on the 18th day of November, 1925, and an order was made by the referee allowing the secured claim of petitioner as a good, subsisting, and valid lien against the homestead of the bankrupt in the sum of $1,-500, and as a general claim against the estate as to the residue of $6,133.33. It was further ordered that the bankrupt refund to the trustee, and that the trustee refund to the estate, and forthwith pay out of the estate to petitioner, the said sum of $1,500; said sum, so paid out of the funds of the estate to be repaid to the estate, as and when the trustee or the bankrupt should comply with the order to refund. The trustee has not complied up to now with either order, nor has the bankrupt refunded to the trustee.

No petition or petitions for a review of any of the above orders have ever been filed by any of the parties in interest, although the last one in point of time was made on the 18th day of November, 1925. On the 1st day of October, 1926, the First National Bank filed its petition in this court for an order upon the trustee requiring him to pay to it the sum of $1,500, being the sum of petitioner's adjudged valid mortgage lien on the homestead. Thereafter, on October 11, 1926, the trustee filed herein his motion to vacate the order of the referee, made on the 18th day of November, 1925, allowing the claim of petitioner as a lien, and ordering the trustee to refund and to pay the sum of $1,500 to petitioner, as above recited. This motion to vacate is bottomed on the theory that the order of November 18, 1925, revoked and vacated the order of October 9, 1924, by which the value of the homestead was adjudged. There is nothing said in the order of November 18, 1925, as to vacating or revoking the order of October 9, 1924, nor does such latter order purport in terms to vacate or revoke it.

[1-3] It will be seen that neither of the matters here before the court is a petition for review of any matter, thing, or order made by the referee. Indeed, no petition for review has ever at any time been filed as to any order or orders made by the referee in this case. Such a petition must at least be filed within a reasonable time after the entry of the order of which review is sought. The petition of the First National Bank (and it is not a petition for review) was filed about 11 months after the last order mentioned therein was made by the referee, and the same is true of the motion of the trustee to vacate the order of November 18, 1925. If both or either of these proceedings should be construed to constitute petitions for review, they could not be maintained, because they are out of time. I know of no other method by which an order of a referee can be set aside, vacated, or annulled, save by a petition for review, timely filed, as provided by rule 27 of the General Rules in Bankruptcy.

The courts and the text-books seem to

agree that the method provided by rule 27, supra, is exclusive. 1 Collier on Bankruptcy, 926; In re F. M. & S. Q. Carlile (D. C.) 199 F. 612; In re Marks (D. C.) 171 F. 281; In re Clark Coal & Coke Co. (D. C.) 173 F. 658; Craddock-Terry Co. v. Kaufman (D. C.) 175 F. 303; In re Octave Mining Co. (D. C.) 212 F. 457. Certainly, in a matter of this sort, an order made by the referee must stand as made, unless it is annulled and vacated pursuant to a petition for review timely sued out. It follows that I have no power to sustain a motion to vacate an order of the referee, made 11 months before the filing of such motion; and this is so, even if I were able to construe this motion to vacate as equivalent to a petition for review.

[4] Before considering the status of the case as to the legal power of this court to order the trustee to comply with the referee's order of November 18, 1925, it may be well to consider whether the latter order is or is not in diametrical conflict with the order made by the referee on October 9, 1924. The latter order set apart to the bankrupt the sum of $1,500 cash, in lieu of homestead; but it did not order the trustee presently, or at any other time, to pay this sum (so found as the value of the homestead) to the bankrupt. It was necessary, in order to warrant the trustee in taking credit for the value of the homestead claimed, for the referee to enter an order finding the existence of such facts as warranted in law the making of the order of exemption. In short, an order about the matter had to be made by the referee before there could exist any right in the trustee to take credit for the value of the homestead, or for the petitioner to claim it as validly subject to the deed of trust.

Whether the order made was or was not unnecessarily broad I need not discuss. Broad as it may have been, it yet contained no order on the trustee to make present payment of the sum found as the value of, and set apart as, the homestead. The homestead, I repeat, had to be set apart to the bankrupt before a legal basis would exist on which to bottom the lien claim of petitioner, as also before the trustee could either take credit for the value of it, or justify the trustee in transferring it to the petitioner, or justify the referee in ordering it to be transferred to petitioner under the latter's lien. That petitioner had a subsisting, valid lien on so much of the lots as constituted the homestead, does not seem to be controverted. At any rate, such seems to be the law of Missouri. Bank v. Mell, 185 Mo. App. 510, 172 S. W. 484. See, also, Cowan v. Burchfield (D. C.) 180 F. 614; Mills v. Fisher & Co. (C. C. A.) 159 F. 897, 16 L. R. A. (N. S.) 656.

[5] The order made by the referee, setting apart the homestead, was then, I think, a necessary order. Some finding of facts, as to residence, head of a family, and amount was necessary, and some such order was required. The order may have gone further than the situation demanded; but at least, as said, it contained no specific order on the trustee to pay the bankrupt the value of the homestead so set apart, or any sum. The money paid by the trustee to the bankrupt as and for the latter's homestead did not come out of the homestead, or the proceeds thereof, for the latter had not been sold when the trustee delivered the $1,500 check to the bankrupt. So, when this check was delivered, the trustee was not legally advised that the homestead was worth or would bring $1,500. It was only after the bankrupt got the check for the adjudged value of the homestead that the trustee filed his application for an order to sell the homestead at private sale; while the trustee says he had already contracted to sell it for $3,000, he could not know that the referee would make an order for such sale at such price. The check was delivered by the trustee on October 10, 1924; application for an order to sell the homestead at private sale was made on October 11, 1924; and the order of sale was made on that day.

The record is so filled with facts which show that the trustee had knowledge of the alleged existing lien of petitioner and of the controversy thereabout, and that the money arising from the sale of the lots was to be held till the equities therein could be fully threshed out and settled, that no need arises to discuss this phase of the case. The specific money which the trustee got for this homestead, so far as the record shows, is still in the trustee's hands. On that money a lien was created by the orders of the referee, to the extent of $1,500. The orders of the referee were that the trustee should pay back to the estate the sum of $1,500, which the trustee had unlawfully paid to the bankrupt, and that the trustee should pay to the petitioner the sum of $1,500, out of the estate in the hands of the trustee. The trustee has failed, neglected, and refused to comply with either order. I think both orders were proper and correct, and that compliance therewith should at once be made by the trustee; and so it is ordered.

Whether these orders are of worth, save as conditions precedent to such further action in the premises as counsel for petitioner may deem it advisable to take, I need not now consider, and do not now rule. These questions

may become apposite, should a citation for contempt, or an action on the bond of the trustee, be deemed the proper remedy. I am neither passing on nor suggesting the remedy, nor upon the question whether it was at all necessary to have the matter presented to this court, in order to have the court reiterate what had already been ordered by the referee. At least, however, the matter of the petition is one, I think, about which the trustee cannot complain, for that he has had two days in court, when he was, perhaps, entitled to but one.

Orders, therefore, may be entered (1) overruling the trustee's motion to vacate the order of the referee of November 11, 1925; and (2) ordering the trustee forthwith (a) to refund the sum of $1,500, which he unlawfully and without warrant of authority paid to the bankrupt, on October 10, 1924; and (b) that the trustee forthwith pay to the petitioner the sum of $1,500 (without interest, except from the date of this order) out of the funds in his hands belonging to the bankrupt estate.

Let orders be submitted accordingly.