NEAL v. COE *et al.*

1. **Homestead:** REQUISITES OF. While the intention to occupy premises as a homestead is not sufficient to invest it with that character, nevertheless, under some circumstances, the homestead character may attach without the actual presence of the family.

2. —— APPLICATION OF THE RULE. Defendants removed and shipped their goods to D. with the intention of going into premises purchased by them there, and which were undergoing repairs. Finding on their arrival at D. that the repairs were not completed and the property not in a condition suitable for occupation, they placed most of the goods in the house and took boarding themselves at a hotel near by, where they remained until the completion of the repairs. *Held,* that the homestead character attached from the time of the use and occupation of the premises by the placing of the defendants' goods therein, and that it was exempt from liability for a debt contracted intermediate the removal of the goods into the house and the actual occupation or presence of the family therein.

*Appeal from Washington District Court.*

TUESDAY, DECEMBER 11.

ACTION OF RIGHT. The defendants filed an equitable answer and cross-petition, claiming the property in controversy as their homestead. Decree for defendants. Plaintiff appeals. The facts are disclosed in the opinion.

*McJunkin & Henderson* for the appellant.

*H. & W. Scofield* for the appellees.

DAY, J. — About the 1st of March, 1857, the defendants owned a homestead in Davenport, of the value of $1,400, on which they resided. At that time the defendant Wales Coe, being called to the pastorate of a congregation at Crawfordsville, Washington county, the defendants purchased the premises in controversy for $800, being fifteen acres of ground in the suburbs of the town of Crawfordsville, with house, stable, shrubbery and fruit

trees thereon, with the view of occupying it as their home. The deed to this property was executed to Julia E. Coe about the 1st of April following.

The defendant Wales left money for the making of repairs upon the premises, and went to Davenport for his family, intending upon his return to move into the house if ready for their occupancy, the joiners agreeing to do what they could to have it in suitable condition for use by that time.

Prior to the departure of the defendants from Davenport they shipped all their household goods to Crawfordsville by way of Muscatine and Iowa City, these being at that time the nearest railway stations. Part of the goods, consisting of chairs, sofa, bedstead and stove, preceded the defendants, and were placed in the house on the 15th of March.

The defendants, with another part of the goods, reached the premises about the 1st of April.

Finding the property not in condition suitable for occupancy they took boarding by the week at a hotel near by, and removed there a writing desk, and a bureau to contain their clothing. The remainder of their goods came from time to time, as the condition of the roads permitted, and were unpacked and left in the house. Their horse and buggy were kept in the stable on the premises. The defendants made a garden there and caused part of the land to be sown in small grain. The defendant Wales superintended and helped the joiners. All the members of the family were at the house, more or less daily, and regarded the place as their home. About the last of June, 1857, they moved into the house, and they have occupied it as their homestead ever since.

The plaintiff boarded at the hotel with the defendants, and knew that they were repairing the premises in controversy for a home.

On the 16th of May he advanced the defendants $700,

Neal v. Coe.

and on the 1st of August $240, and took their notes for the amounts. The transaction seems to have been done for the accommodation of the plaintiff, for the money was taken to Davenport and put in bank to be loaned at 15 per cent, the same rate that defendants paid. In November, 1858, these notes were canceled, and a new note was given for the amount of both, with interest. Upon this note judgment was obtained in November, 1859, and the land in question was sold in September, 1869. A sheriff's deed therefor was executed in October, 1870, and under this the plaintiff claims the property.

Under the circumstances was the property in question, at the time of the contracting of the debt named, the homestead of the defendants?

The uniform current of decision in this State is that actual use and occupation of property as a home is necessary in order to impress upon it the character of a homestead. *Elston & Green* v. *Robertson*, 23 Iowa, 208; *Christy* v. *Dyer*, 14 id. 438; *Cole* v. *Gill*, id. 527; *Williams* v. *Swetland*, 10 id. 51; *Charless & Blow* v. *Lamberson*, 1 id. 435. In the cases which have heretofore been discussed it was sought to invest the property under consideration with the homestead character from the mere *intention*, existing at the time of contracting the debt, of occupying it in the future as a home, and an actual occupancy begun after the debt was contracted. They do not determine what circumstances constitute use and occupation. It is clear, however, that the actual, continued presence of the family is not necessary in order to preserve the homestead character when it has once attached. In *Tyffe* v. *Beers*, 18 Iowa, 4, it was held that an absence from the premises of over five years did not divest the homstead character, the *animus revertendi* being shown.

In *Williams* v. *Swetland*, 10 Iowa, 51, Williams deeded certain lands to Gower. At the time of making the deed Williams lived upon the premises with his housekeeper,

but he disclaimed the property as a homestead. His wife and two children lived in Massachusetts, and had a home there. Williams stated that he wanted his wife to come on, but she did not care to, and he expected that he would have to go back there. Afterward she came, and the plaintiff brought an action for the recovery of the property upon the ground that at the time of making the conveyance he was a married man and the head of a family, and occupied the premises as his homestead, and his wife did not concur in the conveyance. It was held a homestead, and that the conveyance passed no title. From this case it appears that, under some circumstances, the homestead character may *attach* without the actual presence of the family. While the intention is not alone sufficient to impress the homestead character, yet it may be considered in connection with the circumstances. Some time usually intervenes after the purchase of property before it can be actually occupied. Even after the process of moving begins it frequently takes days before the furniture can be arranged, and the house placed in comfortable condition for actual occupancy. Under such circumstances great inconvenience might arise if the homestead character was made to depend upon the actual, personal presence of the members of the family. Law is entitled to and can command respect only when it is reasonable, and adapted to the ordinary conduct of human affairs. In this case the house in question was used by defendants for holding a portion of their furniture on the 15th of March. On the 1st of April the family came expecting to possess it, but, the repairs not being completed, they did not actually sleep and eat in it until twelve weeks thereafter. In the mean time the repairs were progressing, and the furniture was unpacked and left there as it arrived. The plaintiff had knowledge of this possession, and of the intention of defendants to fully occupy the premises as a home as soon as they were made fit. Under these circumstances it seems to us the court

did not err in holding it exempt from liability for plaintiff's judgment.

Appellant insists that the burden of proof is upon defendant to show that the property in question is not within a town plat. If this should be conceded this fact is shown *prima facie* from the evidence that it is situated *in the suburbs* of the town of Crawfordsville.

The decree is

Affirmed.