# Blum *v.* Carter.

### *Statutory Contest as to Right of Homestead Exemption.*

1. *Homestead exemption; governed by what law.*—The extent and quantity of the homestead, which is exempt as against execution creditors, are governed by the law which was in force at the time the debt was contracted against which the right is claimed, and not by that which may be in force when the right is asserted.

2. *Same, in 1870.*—The extent and quantity of the homestead in 1870 was determined only by the provisions of the constitution of 1868, which fixed the quantity, in lands in the country, at eighty acres.

3. *Same, by tenant in common.*—A tenant in common may claim a homestead in lands owned and occupied by himself and others, but the area of the homestead is not enlarged on account of his partial interest in it: if he would only be entitled to claim eighty acres in lands owned entirely by him, he can only claim a homestead in that quantity of lands held and owned by him in common with others.

4. *Same; occupancy.*—Not only title, but actual occupancy also, as distinguished from constructive possession, is essential to the right of homestead : there must be an occupancy in fact, or a clearly defined intention of present residence and occupancy, delayed only by the time necessary to effect removal, or to complete needed repairs, or a dwelling-house in process of erection ; and this intention must be shown by acts of preparation of a visible character, or by something equivalent thereto, before the lien of the creditor's execution has attached.

5. *Affidavit of exemption.*—An affidavit, in support of a claim of homestead exemption, must show that the premises were occupied as a homestead, or that there was a manifested intention and preparation to occupy, when the lien of the execution attached ; and when the homestead is part of a larger tract of land, the particular portion claimed must be designated.

APPEAL from the City Court of Montgomery.

Tried before the Hon. JOHN A. MINNIS.

This was a statutory contest as to the right to a homestead exemption in certain lands in said county of Montgomery, on which an execution had been levied in favor of Edward Blum against Henry C. Carter. The plaintiff's judgment against said Carter, on which the execution issued, was rendered on the 7th November, 1872 ; and it was founded on a promissory note, dated the 10th February, 1870, and payable at a date

[Blum v. Carter.]

not shown by the record. The execution on this judgment, which was levied on the lands, was issued on the 18th April, 1877. After the levy of the execution, the defendant claimed a homestead exemption in the lands, and made the affidavit prescribed by the statute; and the plaintiff thereupon made a counter affidavit, denying the right of exemption as claimed, and an issue was made up between the parties, in accordance with the provisions of the statute. On the trial of this issue, as the bill of exceptions recites, "the evidence was substantially as follows: The land originally belonged to the defendant's father, and, after his death, was assigned to his widow, who was defendant's mother, as a homestead. The time of her death was not proved. After her death, the title vested in two adults, the defendant, witness, and one minor. At the time of the levy of the execution, the defendant and the other adult were in possession of the land. At some time before the levy, and after the death of their mother, several cabins were erected on the land by witness and the defendant, for the accommodation of laborers on the land, who might occupy the same. No dwelling-house had ever been on said land, and it had never been occupied by defendant as a dwelling-place; but he lived in a rented house, on rented land, two hundred and fifty, or three hundred yards, from the land in dispute. Some time before the levy of the execution, the defendant hauled some lumber on said land, and stated at the time of the hauling, according to the evidence of a witness, that he intended to erect a dwelling-house for his family on said land, and was hauling in lumber for that purpose. The plaintiff objected to said evidence, because it was illegal and irrelevant; but the court overruled the objection, and plaintiff excepted. There was no evidence as to the time when said lumber was hauled, or as to the character or quality thereof. This being all the evidence, the court charged the jury, that to entitle a party to hold a homestead exempt from execution, he must occupy it as a homestead: that if, at the time of the levy of the execution, the defendant was cultivating the land, and his hired hands were living on it, and he had hauled lumber on it, and was preparing to build a residence on it, and was proceeding to do so in a reasonable time, intending it as a residence for his family, and to occupy it as a homestead,—that would be such an occupancy as was required by law to constitute it a homestead exempt from execution." The plaintiff excepted to this charge, and requested the court, in writing, to instruct the jury as follows: " If the jury believe, from the evidence, that there never was a dwelling-house on said land, owned and occupied by the defendant, then the defendant can not

[Blum v. Carter.]

claim the property as exempt." Also, "that the jury, if they believe the evidence, must find for the plaintiff." The court refused each of these charges, and the plaintiff excepted to their refusal. The errors assigned are, the charge given by the court, the refusal of the charges asked, and several rulings of the court preliminary to the formation of the issue, which require no notice.

SAYRE & GRAVES, for the appellant.

D. S. TROY, contra.

STONE, J.—The debt, against which the homestead right of Carter is asserted in this case, was contracted in 1870. At that time, only the provisions of the constitution of 1868 operated on the question of the extent and quantity of the homestead exemption. The quantity, if not in a city, town, or village, was fixed at eighty acres. We have uniformly held, that the law in force at the time the debt is contracted, must determine the extent and value of the homestead, and not the law in force, if different, when the exemption is claimed.—*Watts v. Burnett*, 56 Ala. 340; *Wilson v. Brown*, 58 Ala. 62, and authorities there cited; 60 Ala. 302.

It is one of the uncontroverted facts in this case, that Carter, the appellee, was and is one of three tenants in common, holding and owning, as such, three hundred and thirty-three acres of land; the interest of each being one undivided third, equal to one hundred and eleven acres. In *McGuire v. Van Pelt*, 55 Ala. 340, we decided, that the owner and occupant of a homestead, although a tenant in common with others, and therefore having only an undivided partial interest in the premises, is nevertheless entitled to homestead exemption. We held, however, that "the area of the exemption is not enlarged, to compensate for defects of title, or fractions of ownership. Such interest, and such only, as the owner has in the given quantity exempted, is reserved for the use of the family; and the owner and his family are permitted to retain and occupy it as it is, and only as it is." Applying this principle to the present case, Carter could only retain, as homestead exemption, his undivided third part of the eighty acres provided for in the constitution. He could not claim his undivided one-third part in two hundred and forty acres, so as to give him the equivalent of eighty acres in fee, or severalty. This would be to enlarge the area of the exemption, to compensate for fractions of ownership.

Occupancy is an indispensable element in every valid claim of homestead. Title and possession may both be com-

plete in law—such possession as will maintain trespass *quare clausum fregit;* and yet, if the premises be not actually occupied—a *pedis possessio,* as the law phrases it—the claim is not good under the constitution of 1868. Owned and *occupied,* are essential conditions.—*McConnaughy v. Baxter,* 55 Ala. 379. "Unless devoted to use and occupancy as a home, a dwelling place, protection is not extended to it. It is because of its use and occupancy as a home—to secure and preserve it as such—that exemption from sale under judicial process is granted."—*Ib.; Dexter v. Strobach,* 56 Ala. 233. Speaking of Lord COKE's definition, Thompson, in his work on Homesteads, says: "The homestead means the home place—the place where the home is; and such is its legal acceptation at the present day. It is the home—the house and the adjoining land, where the head of the family dwells—the home farm. It is the land where is situated the dwelling of the owner and his family. A homestead necessarily includes the idea of a residence. It must be the owner's place of residence—the place where he lives."—Section 100. "The nature of the *occupancy,* by which land may be impressed with the homestead character, should be carefully distinguished from *possession,* such as may be sufficient to serve as evidence or notice of title in the possessor. The latter may be *constructive,* while the former should in every instance be *actual*—in the sense that it should not depend upon paper evidence, the mere erection of improvements, the payment of taxes, or the exercise of personal control over the property to be affected."—*Ib.* § 241.

A question is raised in this case, whether an intention to occupy, and preparation therefor, are the equivalent of actual occupancy. In cases of change of homestead from one place to another, or of purchase of a place for a homestead, some interval of time must elapse before there can be an actual occupancy of the new homestead. In the case of *Brown v. Martin,* 4 Bush, 47, the Kentucky statute exempting the homestead was construed. The language of their statute of exemption is, "so much land, including the dwelling-house and appurtenances owned by the debtor, as shall not exceed in value one thousand dollars." Nothing said about occupancy, except what may be inferred by the word *dwelling-house.* The court said, "The right of exemption depends upon the present and actual purpose and intention of the debtor to use and enjoy the property sought to be exempted as a home for himself and family."

The case of *Neal v. Coe,* 35 Iowa, 407, presented the case of a change of residence of the debtor; and, consequently, the inquiry whether an intention to occupy was equivalent to

occupancy, and how that intention should be manifested. The defendant had removed and placed part of his furniture in the newly purchased residence, and the residue had been removed from the old homestead ; and it, together with himself and family, were only *awaiting necessary repairs that were being made, preparatory to taking possession of the newly acquired house as a residence. They had left the former home, and were boarding temporarily near the newly purchased premises. The court said : " While the intention is not alone sufficient to impress the homestead character, yet it may be considered in connection with the circumstances. Some time usually intervenes after the purchase of property before it can be actually occupied. Even after the process of moving begins, it frequently takes days before the furniture can be arranged, and the house placed in comfortable position for actual occupancy. Under such circumstances, great inconvenience might arise, if the homestead character was made to depend upon the actual, personal presence of the members of the family. Law is entitled to, and can command respect, only when it is reasonable, and adapted to the ordinary conduct of human affairs. In this case, the house in question was used by defendants for holding a portion of their furniture on the 15th of March. On the 1st of April, the family came, expecting to possess it ; but the repairs not being completed, they did not actually sleep and eat in it, until twelve weeks thereafter. In the meantime, the repairs were progressing, and the furniture was unpacked and left there as it arrived. The plaintiff had knowledge of this possession, and of the intention of defendants to fully occupy the premises as a home, as soon as they were made fit. Under these circumstances, it seems to us the court did not err in holding it exempt from liability for plaintiff's judgment."

In the case of *Grozholz v. Newman,* 21 Wallace, 481, a question arose as to the power of a husband to convey title to a lot in Austin, Texas, without the concurrence of the wife. The constitution of Texas ordained, that the owner of a homestead, if a married man, shall not be at liberty to alienate the same unless by the consent of the wife. The court said : " It is admitted that the deed was good, if the lots described in it were not, in fact, a part of the homestead at the time of its execution. It rests upon the complainants, therefore, to prove that they were. To do this, it must be made to appear that they were actually used, or manifestly intended to be used, as part of the home of the family. . . . A secret intention of the seller, not made known, can not affect a purchaser. Unless the purchaser knew, or from the cir-

cumstances ought to have known, that the lots were a part of the homestead, he had the right to treat with, and purchase from the husband, without the concurrence of his wife."

In *Coolidge v. Wells*, 20 Mich. 80, it was decided, that "land on which no dwelling-house had ever been erected or commenced, and on which the complainant nor his family had ever resided, is not exempted as a homestead." See, also, *Dean v. Scott*, 37 Tex. 59. In *True v. Morrill*, 28 Vermont, 672, it was ruled, that "land which has a dwelling-house upon it, occupied by a tenant, but upon which the owner never resided, can not be treated as his homestead, though he had no other dwelling-house, and may have contemplated living on the premises at a future time." It was declared in *Fogg v. Fogg*, 40 N. H. 282, that the homestead right attached under the following state of facts: "While the debtor was in the act of moving into his dwelling-house, with a design to occupy it as the family homestead, and having no other real estate, the plaintiff, his creditor, attached it upon mesne process, and the debtor completed the moving in on the next day, and ever afterwards, up to the trial, occupied it as the family residence."

Guided by these principles, we hold that, to constitute a valid claim of homestead, there must be an occupancy in fact, or a clearly defined intention of present residence and actual occupation, delayed only by the time necessary to effect removal, or to complete needed repairs, or a dwelling-house in process of construction. An undefined, floating intention to build or occupy at some future time, is not enough. And this intention must not be a secret, uncommunicated purpose. It must be shown by acts of preparation of visible character, or by something equivalent to this.—*Daniel v. Collins*, 57 Ala. 625; *Boyle v. Shulman*, 59 Ala. 566; *Preiss v. Campbell, 1b.* 635; *Chambers v. McPhail*, 55 Ala. 367.

The present record does not inform us when the lien of the plaintiff attached, by the delivery of execution to the sheriff. To prevail over the execution claim, the occupancy, or manifested intention and preparation to occupy, must have preceded the time when the lien attached. Homestead claim can not override prior liens, whether given by law, or created by contract. We refer, of course, to liens whose vitality has been preserved.—*Preiss v. Campbell*, 59 Ala. 635. The affidavit of claim in the present case is fatally defective, in several respects. It does not set forth that the premises were occupied as a homestead, when the lien of the execution attached, nor does it show a state of facts to bring it within the rule above declared. The tract of land contains three hundred and thirty-three acres, and the affidavit fails

to select or designate eighty acres, in which the homestead is claimed. The motion to quash the affidavit of claim ought to have been sustained.

We consider it unnecessary to notice the other rulings, as what we have said will furnish a sufficient guide on another trial.

Reversed and remanded.