### DYER TRADING COMPANY *v.* HARRISON.

### Opinion delivered February 3, 1919.

HOMESTEAD—EXCHANGE OF HOMESTEAD.—Where a judgment creditor owning a rural homestead exchanged it for city property intending to make it her home, and carried this intention into effect by moving to it within 5 days after the exchange of deeds, she could claim it exempt as against an execution levied upon it between the time of exchange of deeds and of moving.

Appeal from Crawford Circuit Court; *Jas. Cochran,* Judge; affirmed.

*Starbird & Starbird,* for appellant.

The intention alone is not sufficient; there must be actual occupancy within a reasonable time after the exchange. Kirby's Digest, § 3900; 104 Ark. 637; 89 *Id.* 506; 84 *Id.* 359; 42 *Id.* 175; 57 *Id.* 179; 125 *Id.* 456; 51 *Id.* 84; 63 *Id.* 299; 69 *Id.* 109; 52 *Id.* 493, 3rd syllabus. The proceeds of a sale of a homestead are not exempt. The town lot was not exempt as it was the proceeds from the sale of a rural homestead and there was no actual occu-

pancy. The lien had attached and subsequent occupancy would not displace it. Cases *supra.*

*E. D. Chastain,* for appellee.

The homestead act is liberally construed. As to it there are no debts or creditors. 105 Ark. 145. It may be exchanged for another. 21 Cyc. 499; 74 Ark. 186. The right to exemption is clear. A rural homestead was exchanged for an urban one, and the latter was actually occupied as a homestead in a few days.

SMITH, J. This cause was tried in the court below on an agreed statement of facts, from which it appears that Bettie Harrison, the appellee, owned a rural homestead, forty acres in extent, of the value of eight hundred dollars, which she traded for some lots in the village of Dyer, of about the same value, and less than an acre in area. She made the trade for the purpose of changing her home from the country to the town, and consummated this intent by moving into the town house about three to five days after the exchange of deeds. But during this interval of from three to five days an execution was levied upon the town property, whereupon appellee filed her schedule claiming this property as her homestead, and, her claim of homestead having been sustained, a supersedeas was ordered and the sale suspended, and this appeal has been prosecuted to review that action.

In 13 Ruling Case Law, at section 57 of the article on "Homestead," p. 593, it is said: "While the character of any property as homestead depends on intention, and all other things combined cannot give to property such character without the intention to dedicate it to the uses of a home, it is well settled that intention alone cannot give a homestead right, and some authorities go to the extent of holding that a mere intention to occupy, though subsequently carried out is not sufficient. The rule in many jurisdictions, however, is not so technical and turns rather on the spirit of the law than on literal constructions, and is to the effect that there must be an occupancy in fact, or a clearly defined intention of pres-

ent residence and actual occupation, delayed only by the time necessary to effect removal, or to complete needed repairs, or a dwelling house in process of construction; that an undefined, floating intention to build or occupy at some future time is not enough, and that this intention must not be a secret, uncommunicated purpose, but must be shown by acts of preparation of visible character, or by something equivalent to this. The rule that conforms most nearly to the spirit of the homestead laws is that a *bona fide* intent to occupy premises as a homestead, even though not immediately consummated, will be sufficient, if followed by acts of preparation for use, and subsequent early use. * * * Even in the jurisdictions where the rule obtains that a mere intention to occupy property as a home does not give to it the character of a homestead before it is actually occupied for that purpose, it is held that such rule is not of universal application to new homesteads acquired in exchange for old ones and it has been decided that the length of time intervening between the sale of the old and the acquiring of the new is not essentially a controlling circumstance and that a considerable lapse of time may not be inconsistent with an honest intention to change the homestead."

A well considered case supporting the text just quoted is that of *Mann* v. *Corrington*, 61 N. W. 409, 93 Iowa 108, 57 A. S. R. 256.

In the opinion of this court in the case of *Gill* v. *Gill*, 69 Ark. 596, it was pointed out that "In Iowa there is an unbroken line of decisions holding that occupancy, the use of the house by the family as a homestead, is an essential requirement to impress the property with the character of a homestead; that the 'mere intention to occupy it, though subsequently carried out, is not sufficient.' *Charless* v. *Lamberson*, 1 Iowa 435; *Christy* v *Dyer*, 14 Iowa 438; *Elston* v. *Robinson*, 23 Iowa 208; *Givans* v. *Dewey*, 47 Iowa 414; *First National Bank* v. *Hollingsworth*, 78 Iowa 575."

Yet that court held, in the case of *Neal* v. *Coe*, 35 Iowa 407, as stated in the opinion in *Gill* v. *Gill, supra,*

that "While the intention is not alone sufficient to impress the homestead character, yet it may be considered in connection with the circumstances. Some time usually intervenes after the purchase of property before it can be actually occupied. Even after the process of moving begins it frequently takes days before the furniture can be arranged, and the house placed in comfortable condition for actual occupancy. Under such circumstances great inconvenience might arise if the homestead character was made to depend upon the actual personal presence of the members of the family. Law is entitled to and can command respect only when it is reasonable, and adapted to the ordinary conduct of human affairs."

In applying the doctrine of this Iowa case to the facts before the court, our court held (to quote the syllabus): "Where the owner of a house, being a resident of this State, and a married man, moved part of his furniture into it with the intention to occupy it as a homestead, but was taken sick and died before the moving was completed, and before any of his family had actually resided therein, and after his death his wife completed the moving and took up her residence therein, the house was 'occupied as a residence' within art. 9, sec. 5 of the Constitution, so as to entitle his wife and minor children to claim the same as a homestead."

The case of *Monroe et al.* v. *May, Weil & Co.*, 9 Kan. 466, is similar in its essential facts and the applicable provisions of the Constitution and statute of that State were not unlike our own. A farm was sold in November and the owner received certain money and a lot in Atchison in exchange. Possession by agreement was to be exchanged on the first of March following, and the exchange was made at the appointed time and the city lot was thereafter occupied as a homestead. Against the claim of a judgment creditor who sought to subject the lot to the payment of his judgment the Supreme Court, speaking through Mr. Justice Brewer (later member of the Supreme Court of the United States), said: "That the homestead exemption covered the Rose house and lot,

seems to us clear. True, there was a period of time between the execution of the conveyance, and the taking of possession. But the transaction, as it appears to us, was no more than the exchange of homesteads. Mr. Monroe traded his homestead in the country for one of less value in the city. When he gave possession of the one, he took possession of the other. There was no intermediate homestead. Now, all legislation must be construed with reference to settled usages, necessary facts. No man will enter premises until he has some right to enter. The right is determined before the entry is made. Occupation of a homestead succeeds, in point of time, its purchase. This is true, except in a few instances, as, where one buys a house he has theretofore occupied as a tenant. To give a fair and reasonable interpretation of the homestead law, this fact must be recognized. The purpose of that law was to secure to each family its homestead. We may not defeat this beneficent purpose by strict, technical, arbitrary constructions. As we said in the case of *Edwards* v. *Fry* (ante, 417, 425), 'A purchase of a homestead with a view to occupancy, followed by occupancy within a reasonable time, may secure *ab initio,* a homestead inviolability.' A man may sell his homestead, and give good title, no matter how many judgments may be standing against him. *Morris* v. *Ward,* 5 Kan. 247. The proceeds of that sale he may reinvest in a homestead, and though he do not actually occupy until after he has completed his purchase, and secured his title, still if he purchase it for a homestead, and enter into occupation within a reasonable time thereafter, no lien of existing judgments will attach.''

The facts of the instant case constitute a mere exchange of a rural homestead for an urban one. The value of the homestead right would be greatly restricted and lessened if such right of exchange could be defeated by a creditor who had no right to subject the original homestead to the payment of his debt. That such exchange can be made free from the interference of creditors is the effect of the decision of this court in the case

of *Godfrey* v. *Herring,* 74 Ark. 186. See, also, *Schneider* v. *Bray,* 59 Tex. 668.

The claim of homestead was properly allowed and the judgment to that effect is, therefore, affirmed.