MURDOCK, Justice
(dissenting).
I believe that the trial court correctly decided this case; that in reversing the trial court’s judgment the Court of Civil Appeals misinterpreted Art. IV, § 217(a), Ala. Const. 1901 (Official Recomp.) (formerly Amendment No. 373), and §§ 40-8-1(a) and (b)(6), Ala.Code 1975; that the petition before us states valid grounds for certiorari review; and that we should grant that review. I therefore am compelled to dissent from the decision of the majority of this Court to deny certiorari review in this case.
Before October 1, 2005, Daniel S. Wolter and Dana K. Wolter, husband and wife (“the Wolters”), purchased a residence in Jefferson County, Alabama, in an area zoned solely for single-family dwellings. When their builder determined that they could not construct an addition to the house, the Wolters decided to remove the house from their lot and construct a new home for their use on the same site. At all times relevant to these proceedings, the Wolters intended to use their property, including the newly constructed home, as their family’s personal residence. Following the trial court’s entry of a summary judgment in the Wolters’ favor, their new home was completed and, consistent with their stated intentions from the outset, the Wolters and their children moved into their new home and occupied it as their personal residence.
On October 1, 2005, during the construction of the Wolters’ new home and before it was completed, the Jefferson County Board of Equalization appraised the new residence. The Wolters appealed the appraisal and were awarded relief by the Board of Equalization. During the appraisal-appeal process, notices from the Board of Equalization to the Wolters never discussed or mentioned the taxation classification of the property.
In October 2006, while their new home was still under construction, the Wolters received a. notice indicating that the tax-assessment classification for their property had been changed from Class III to Class II. This meant that their property would be subject to ad valorem taxation based on an assessment rate of 20% of fair market value rather than 10%.
Section 217(a), Ala. Const. 1901 (Official Recomp.), defines “Class III” property, in part, as “single-family owner-occupied residential property.” Sections 40-8-1 (a) and (b)(6), Ala.Code 1975, implement § 217(a). Section 40-8-l(a) defines “Class III” property as “[a]ll agricultural, forest and residential property, and historic buildings and sites,” and specifies a ratio of assessed value to fair market value for such property of 10%. Section 40-8-1 (b)(6) defines “residential property” as “real property, used by the owner thereof exclusively as the owner’s single-family dwelling.”
Section 40-8-l(a) also defines “Class II” property as “[a]ll property not otherwise classified,” and prescribes a ratio of assessed value to fair market value for such property of 20%. Class II is a designation *1038 used primarily for income-producing property, i.e., rental property.
The Wolters filed an appeal of the assessment of their property to the Jefferson Circuit Court, seeking an order requiring the county to return their property to a Class III designation. The parties filed cross-motions for summary judgment. The defendants — the tax assessor and the Jefferson County Board of Equalization— contended that, because the Wolters were not actually occupying their house on October 1, 2005, the property must be classified as “Class II” and, further, that the Wol-ters were not entitled to the “homestead” exemption provided for Class III property. The Wolters contended that their new house was being constructed for the use of their family as a single-family residence and that this was the only use for which their property was zoned. They argued that they are entitled to a Class III designation, that the house was their “homestead,” and that the property should be assessed at 10% of fair market value.[1]
The trial court entered a summary judgment in favor of the Wolters, stating, in part, as follows:
“The legal issue upon which this case turns is whether the taxpayers’ single family residence was within the statutory definition of ‘residential property.’ The court has concluded as a matter of law that it was ‘residential property and is entitled to be included in the Class III category.
“The property should be assessed at the rate of other private residences. The property had no other use than that of a single-family, owner-occupied dwelling house. It is undisputed that there was never an intent to use the property for anything other than a private, owner occupied house. The zoning allows no other use.”[2]
Dan Weinrib, in his official capacity as tax assessor for Jefferson County, appealed. Citing Ex parte Waddail, 827 So.2d 789, 794 (Ala.2001), for the general proposition that “ ‘ “ ‘[wjords used in a statute must be given their natural, plain, ordinary, and commonly understood meaning,’ ” ’ ” the Court of Civil Appeals reversed the judgment of the trial court. Weinrib v. Wolter, 1 So.Sd 1032, 1035 (Ala.Civ.App.2008). That court reasoned as follows:
“ ‘Residential property’ is defined in Ala. Code 1975, § 40 — 8—1 (b)(6), as ‘[o]nly real property, used by the owner thereof exclusively as the owner’s single-family dwelling.’ (Emphasis added.) Furthermore, the definition of Class III property in Art. IV, § 217(a), includes ‘single-family owner-occupied residential property.’ (Emphasis added.) In construing either § 40-8-1 or Art. IV, § 217(a), there is little room for interpretation as to what type of property is included in Class III property. We conclude that § 40-8-1 and Art. IV, § 217(a), are un *1039 ambiguous as written and require that residential property, in order to be classified as Class III property, must be being used by the owners as their dwelling at the time taxes are assessed.
“In the present case, because the Wol-ters’ house was still under construction and was not occupied by or being used by the Wolters as a single-family dwelling on the applicable assessment date— October 1, 2006 — the property was properly classified as Class II property according to § kO-8-1 and Art. IV, § 217(a).”
1 So.3d at 1035 (emphasis added).
In their petition, the Wolters assert valid grounds for certiorari review, including the fact that the interpretation of the above-referenced constitutional and statutory provisions is an issue of first impression and that the decision of the Court of Civil Appeals is in conflict with a prior decision of the Supreme Court, Blum v. Carter, 63 Ala. 235 (1879). They also argue that the decision of the Court of Civil Appeals is contrary to the oft-recognized principle that, when the proper interpretation of a taxing statute is in doubt, a court must adopt “the interpretation most favorable to the taxpayer.” Alabama Farm Bureau Mut. Cas. Ins. Co. v. City of Hartselle, 460 So.2d 1219, 1223 (Ala.1984); see also State v. Tenaska Alabama Partners, L.P., 847 So.2d 962, 966 (Ala.Civ.App.2002) (requiring tax statutes to be “construe[d] ... strictly in favor of the taxpayer and against the taxing authority”).
The Wolters put it well in their petition: “To opine [that the] statutes are clear in their application to these circumstances, as the Court of Civil Appeals does, is imprudent.” Petition, p. 8 (emphasis added). Them argument continues:
“The Court of Civil Appeals’ decision ignores the nature, the clear intent and the purpose of these statutes regarding the taxation of residential property. ‘The policy of this section, regarding the taxation of the residential property is plain — the state intended to tax owners of single-family residences at a lower rate than owners of other residential property, because residential property which is not used as a single family residence generally is used as income producing property.’ Howell v. Malone, 388 So.2d 908 (Ala.1980). The Court of Civil Appeals, via its ‘strict construction’ of the statute’s language, has yielded an unintended result at the expense of the taxpaying public.”
Petition, pp. 8-9.
The Wolters’ argument, at the very least, has the “probability of merit” contemplated by Rule 39(f), Ala. RApp. P. A married couple purchases a home for use by them and their children. That home and the lot upon which it is situated are zoned for use as a single-family dwelling only and can be put to no other use.[3] Upon learning from their builder that their plans to expand their newly purchased home are not feasible, they decide to remove the existing house from the property and to replace it with a newly constructed one. They set about the task of doing so. Under such circumstances, I do not see how it fairly can be said that the property is not devoted to use as the site of a “single-family, owner-occupied” dwelling.
The Court of Civil Appeals appears to have been hamstrung by the term “owner-occupied” in § 217 of the Alabama Constitution. I would first note, however, that the quoted term is used as an adjective in *1040 § 217, not a verb clause. As such, it modifies, or describes, the type of property eligible to receive a Class III assessment. Section 217 does not unambiguously, as the Court of Civil Appeals reasoned, require an owner to be engaged in the physical act of occupying his or her property on October 1 in order for that property to be the type of property contemplated by § 217 to fall within the Class III designation. Properly understood, the import of § 217 is simply to treat as Class III property that property which is devoted to use as the residence of its owner.
This understanding of § 217 is in accord with the legislature’s understanding of Class III property as expressed in § 40-8-1.That statute defines “residential property” merely as real property “used by the owner thereof exclusively as the owner’s single-family dwelling.” That was the use to which the property in question was being put. It was in the construction phase of that use, but that was the use to which it was being put.
To interpret the constitutional and statutory provisions in a manner urged by the defendants and adopted by the Court of Civil Appeals — focusing on the fact that the property was not occupied by the Wol-ters on the assessment date — is, in my view, an overly technical approach. It is an approach that does not comport with the intent of either those who framed or those who ratified our constitution, or with the intent of the legislature in adopting § 40-8-1. It is an impractical approach and one that does not accommodate the logistical realities of purchasing, renovating, and reconstructing existing residential properties. As far as I can see, it is an approach that would yield results such as the following:
1. A residential property that has been taxed for years (as presumably this one has) as a single-family dwelling would have its taxation classification temporarily changed from Class III to Class II during any period in which any renovation or construction requires the owners (whether preexisting owners or new purchasers) to temporarily move out of the house, only to have the classification revert to the Class III, residential, classification on the day the renovation or construction is sufficiently complete and at least one of the owners begins spending the night in the dwelling again. This would be true even if the owners were to move out of a preexisting home on the property for only a month or two while some renovation work was performed.[4]
2. A family whose renovation work is performed and completed either before or after October 1 would avoid any change in the assessment of its property. A family whose renovation work overlaps any October 1 would not be so fortunate.
3. A family whose home construction is completed and who is able to resume sleeping on its residential property on September 30 of a given year would be treated differently than a family whose construction work lasted only a day or two longer and who, consequently, is unable to resume sleeping on its property until October 2.
Similar impractical results were rejected by the Supreme Court in Blum v. Carter, supra, with which the Wolters contend the Court of Civil Appeals’ opinion is in con *1041 flict. In a case involving the issue of homestead, this Court considered a phrase virtually identical to the one at issue here, namely “owned and occupied.” The Court also considered what it meant for a parcel of land to be “used” as a single-family dwelling by its owner. Moreover, it did so in a case in which, as here, owner-occupancy was an “essential condition.” The conclusion reached in the present case by the Court of Civil Appeals — that the meanings of § 217, Ala. Const.1901, and § 40-8-1, Ala.Code 1975, begin and end with what the Court of Civil Appeals concludes is “plain language” that “unambiguously” excludes a single-family residence under construction or renovation from being assessed as Class III property — is a conclusion that conflicts with this Court’s holding in Carter. That holding is that it is the type of use to which a property is devoted that matters:
“Occupancy is an indispensable element in every valid claim of homestead. Title and possession may both be complete in law — such possession as will maintain trespass quare clausum fregit; and yet, if the premises be not actually occupied — a pedis possessio, as the law phrases it — the claim is not good under the constitution of 1868. Owned and occupied are essential conditions. McConnaughy v. Baxter, 55 Ala. 379 [ (1876) ]. ‘Unless devoted to use and occupancy as a home, a dwelling place, protection is not extended to it. It is because of its use and occupancy as a home — to secure and preserve it as such — that exemption from sale under judicial process is granted.’ Ib.; Dexter v. Strobach, 56 Ala. 233 [ (1876) ].”
63 Ala. at 237-38 (emphasis added). Moreover, the Court continued as follows:
“A question is raised in this case, whether an intention to occupy, and preparation therefor, are the equivalent of actual occupancy. In cases of change of homestead from one place to another, or of purchase of a place for a homestead, some interval of time must elapse before there can be an actual occupancy of the new homestead. ...
“The case of Neal v. Coe, 35 Iowa 407 [ (1872) ], presented the case of a change of residence of the debtor; and, consequently, the inquiry whether an intention to occupy was equivalent to occupancy, and how that intention should be manifested. The defendant had removed and placed part of his furniture in the newly purchased residence, and the residue had been removed from the old homestead; and it, together with himself and family, were only awaiting necessary repairs that were being made, preparatory to taking possession of the newly acquired house as a residence. They had left the former home, and were boarding temporarily near the newly purchased premise. The court said: ‘While the intention is not alone sufficient to impress the homestead character, yet it may be considered in connection with the circumstances. Some time usually intervenes after the purchase of property before it can be actually occupied. Even after the process of moving begins, it frequently takes days before the furniture can be arranged, and the house placed in comfortable position for actual occupancy. Under such circumstances, great inconvenience might arise, if the homestead character was made to depend upon the actual, personal presence of the members of the family. Law is entitled to, and can command respect, only when it is reasonable, and adapted to the ordinary conduct of human affairs. In this case, the house in question was used by defendants for holding a portion of their furniture on the 15th of March. On the 1st of April, the family came, expecting *1042 to possess it; but the repairs not being completed, they did not actually sleep and eat in it, until twelve weeks thereafter. In the meantime, the repairs were progressing, and the furniture was unpacked and left there as it arrived. The plaintiff had knowledge of this possession, and of the intention of defendants to fully occupy the premises as a home, as soon as they were made fit. Under these circumstances, it seems to us the court did not err in holding it exempt from liability for plaintiffs judgment.’ [35 Iowa at 410-11 (discussing Williams v. Swetland, 10 Iowa 51 (1859)).]”
Carter, 63 Ala. at 238-39 (emphasis added).
The Court concluded in Carter as follows:
“[W]e hold that, to constitute a valid claim of homestead, there must be an occupancy in fact, or a clearly defined intention of present residence and actual occupation, delayed only by the time necessary to effect removal, or to complete needed repairs, or a dwelling-house in process of construction.”
63 Ala. at 240 (emphasis added). The condition described is exactly the condition present here — a dwelling-house in the process of construction. The Carter Court also concluded:
“An undefined, floating intention to build or occupy at some future time, is not enough. And this intention must not be a secret, uncommunicated purpose. It must be shown by acts of preparation of visible character, or by something equivalent to this.”
63 Ala. at 240. The Wolters did not have a “secret, uncommunicated purpose”; they did have “acts of preparation” of as “visible [a] character” as one could possibly have.
Because the Wolters have presented to this Court valid grounds for certiorari review in the form of an issue of first impression as to the meaning of provisions in § 217, Ala. Const.1901, and § 40-8-1, Ala. Code 1975, and in the form of a conflict between the decision of the Court of Civil Appeals and the principles recognized in Carter and Alabama Farm Bureau Mutual Casualty Insurance Co. v. City of Hartselle, I respectfully dissent.

. The facts as presented in the petition and in the Court of Civil Appeals’ opinion contain no suggestion that the Wolters were attempting to “game” the system in any manner. For example, there is no indication that the Wol-ters, at the time they were constructing their residence, were claiming a Class III assessment on any other house they were constructing. Nor was the decision of the Court of Civil Appeals against the Wolters premised upon such a notion.

. The trial court continued by agreeing with the Wolters' argument that the literal interpretation of the taxation provision applied by the defendants would have the result of requiring a homeowner to camp out in a sleeping bag in an unfinished house on any October 1 in order to avoid the higher tax classification.

. According to the trial court's judgment, the zoning allowed for no use other than occupancy by the owner, although my vote to grant certiorari review in this case is not dependent upon that fact.

. Indeed, based on the position asserted by the defendants in the trial court, apparently any residential homeowner who moves out of his or her residence for even a few days to allow new flooring to be installed would not be entitled to have the house assessed as Class III property for that small portion of the year during which the homeowner is not occupying the house.